[No. 2320]

## MARK WALSER AND FRANK MARGRAVE, PETITIONERS, v. THOMAS F. MORAN, AS DISTRICT JUDGE OF THE SECOND JUDICIAL DISTRICT OF THE STATE OF NEVADA, RESPONDENT.

[173 Pac. 1149 ; 180 Pac. 492]

1. PLEADING—NATURE—STATUTORY AUTHORITY.

The only source of authority for any pleading and the rules for the construction thereof are drawn from the practice act.

2. ACTION—JOINDER OF CAUSES OF ACTION—AUTHORITY—PRACTICE ACT.

Two or more causes of action cannot be united in the same complaint, unless the joinder is authorized by the practice act.

3. ACTION—JOINDER OF SEPARATE CAUSES OF ACTION—CONSTRUCTION OF STATUTE.

Practice act, sec. 97, specifying cases in which two or more causes can be joined in same complaint, is to be liberally construed, with a view to effect its object.

4. PROHIBITION—NATURE—CORRECTING ERRORS.

The office of the writ of prohibition is not to correct errors, but to prevent courts from transcending the limitation of their jurisdiction in exercise of judicial power.

5. STATUTES—CONSTRUCTION—REGULATION OF EXISTING RIGHT BY NEGATIVE WORDS.

Where an existing right or privilege is subject to regulation by a statute in-negative words, the mode so prescribed is imperative.

6. PROHIBITION—EXCESS OF JURISDICTION—STATUTORY RESTRICTIONS.

Where a statute has imposed restrictions under which a court may act in matters otherwise within its jurisdiction, and those restrictions are disregarded, the party aggrieved may have a remedy by prohibition.

7. PROHIBITION — IRREGULARITIES IN EXERCISE OF INHERENT AUTHORITY.

There is no remedy by prohibition for the correction of errors or a mere irregularity in the exercise of an authority inherent in a court.

8. PLEADING—DEMURRER—ADMISSIONS—MISJOINDER.

A demurrer to a complaint for misjoinder of causes of action concedes that the complaint states two or more good causes of action.

9. ACTION—SEPARATE CAUSES OF ACTION—ARISING OUT OF CONTRACT.

A complaint stating five causes of action, the first being for breach of employment contract, the second and third being for shares of stock alleged to have been acquired by defendants in virtue of their contractual relationship with plaintiff, or for value thereof, and fifth for a discovery and accounting from defendants of all their dealings with certain property of plaintiffs intrusted to them under an executory contract, is not bad for misjoinder; all such causes of action arising out of contract and being authorized by practice act, sec. 97, subd. 1, permitting several causes of action to be united in same complaint, when arising out of contract, express or implied.

10. ACTION—JOINDER OF CAUSES OF ACTION—COMMON LIABILITY OF DEFENDANTS.

A complaint alleging a defendant acquired a part of plaintiffs' property under a contract as their attorney, and that a contract with another defendant, whereby latter was to receive a portion of plaintiffs' property, was void in its inception, because fraudulent, and praying for damages for defendants' failure to protect such property from loss, is bad, because it does not state cause of action against both defendants; the defendants being jointly liable, if at all, and the complaint showing on its face that latter defendant had no interest in property, and hence no duty of protecting it from loss.

11. PRINCIPAL AND AGENT—LIABILITY OF AGENT—ACCOUNTING.

An agent can be brought to account with his principal for moneys and property received in transaction arising out of agency relationship.

12. PLEADING—INCONSISTENT RELIEF—RESCISSION OF CONTRACT—DAMAGES FOR BREACH.

Plaintiff in equity action will not be permitted to rescind a contract for fraud, and, failing in this, to recover damages for breach, and relief for violation of fiduciary obligation created by the contract; such relief being inconsistent.

ON REHEARING

1. PLEADING—COMPLAINT—SUFFICIENCY—CIVIL PRACTICE ACT.

However strong grievances or wrongs may appeal to the conscience of the chancellor for correction and relief, averments and allegations thereof, however varied they may be, make a sufficient complaint only when squaring with the rules of the civil practice act.

2. PLEADINGS — COMPLAINT — STATEMENT OF CAUSE OF ACTION—RELIEF.

Plaintiff is required to state in his complaint facts which constitute his cause of action and nothing more.

3. ACTION—IMPROPER JOINDER—SINGLE CAUSE OF ACTION.

The formal chancery bills for accounting, discovery, and the like are no longer used, but the remedies are preserved, and, conceding a complaint to be a good specimen of a bill in equity, nevertheless, if it states but one cause of action, whatever else it may contain, the defendant cannot successfully demur on the ground of improper uniting of several causes.

4. ACTION—SINGLE CAUSE OF ACTION.

A complaint reciting one connected history of the property affected by an agreement through a series of acts on the part of defendants which contributed to and culminated in the alleged injuries to plaintiffs, showing defendants have a connected and common interest in the one subject-matter of the action, and charging the defendants with an inexcusable disregard of a duty voluntarily assumed by their contract, while showing defendants as much liable in damages for negligent breach of contract as for violation of a trust, constitutes but one cause of action.

5. ACTION—ACTION EX CONTRACTU OR EX DELICTO.

Where the law imposes a duty arising from the relation rather than the contract, and there is a breach of duty, the aggrieved party may sue in trespass on the case, but if there be no legal duty, except arising from the contract, there can be no election, and the party must rely upon the agreement alone, although in either case the complaint may be required to lay a previous ground by showing a contract.

6. ACTION—MISJOINDER OF CAUSES OF ACTION—CONTRACT AND TORT.

The averment of negligence in the first cause of action and fraudulent dealings in the second and subsequent causes *held* to amount to substantial allegations of breach of agreement, and not tort, and hence there was no misjoinder.

7. ACTION—PRAYER—MISJOINDER OF CAUSES.

Plaintiffs are entitled to such relief as they establish upon proper proof of alleged facts, and the prayer for judgment is not demurrable as asking relief upon both tort and contract.

PETITION for writ of prohibition by Mark Walser and another against Thomas F. Moran, as District Judge of the Second Judicial District of the State of Nevada. **Writ granted.**

On rehearing, opinion granting writ of prohibition **reversed,** demurrer to petition sustained, alternative. writ discharged, and **proceeding dismissed.**

*Cheney, Downer, Price & Hawkins,* for Petitioners:

The practice act alone prescribes the rules by which the sufficiency of pleadings shall be determined. Rev.

Laws, 5036; McKim v. District Court, 33 Nev. 44. Only causes of action can be joined which the statute authorizes. State v. Yellow Jacket S. M. Co., 14 Nev. 220. All of the causes joined must belong to one of the classes created by the statute. Rev. Laws, 5039; 14 St. Enc. Proc. 671; 1 C. J. 1074, 1077, 1081; De Wolfe v. Abraham, 45 N. E. 455; Stark v. Wellman, 31 Pac. 259; Thelin v. Stewart, 34 Pac. 861; Gardner v. Ogden, 22 N. Y. 326. The causes authorized to be joined must also "affect all the parties to the action." Rev. Laws, 5039; State v. Kruttschnitt, 4 Nev. 179, 214. In most states, but not in Nevada, causes of action when they arise out of the same transaction, or are connected with the same subject of action, may be united. 14 St. Enc. Proc. 671; 1 C. J. 1081; Jasper v. Hazen, 51 N. W. 583; Wiles v. Suydam, 64 N. Y. 173; Bran v. Christopher, 151 Pac. 172; Hannahs v. Hammond, 19 N. Y. Supp. 883.

It is only actions for causes which are authorized to be united in one complaint that the court has power to order consolidated. Rev. Laws, 4578; 5 St. Enc. Proc. 255, 272.

"A demurrer to a complaint for an improper uniting of causes of action goes to the complaint as a whole, and the only course of plaintiff thereon is to file an amended complaint, leaving out the objectionable causes of action." State v. Williams, 77 Pac. 965, 972; Alexander v. Thacker, 46 N. W. 825. If plaintiff declines to amend by electing which action he will prosecute, it is proper to enter a judgment for the defendant to the effect that plaintiff take nothing by the action. Johnson v. Seattle Elec. Co., 81 Pac. 705.

An order overruling a demurrer is "deemed to have been excepted to." Rev. Laws, 5318. The act of 1915, page 164, in reference to bills of exceptions, has no application to an order which is deemed excepted to, where the order constitutes a part of the judgment roll. An order constituting a part of the judgment roll and deemed excepted to by the statute will be reviewed upon appeal without a bill of exceptions. Davis v.

Honey Lake W. Co., 33 Pac. 270; Hawley v. Kocher, 55 Pac. 696; Alpers v. Bliss, 79 Pac. 171.

"In prohibition proceedings, the primary question is whether it is a case where there is no plain, speedy, and adequate remedy in the ordinary course of law." State v. District Court, 38 Nev. 323. But the concurrent remedy is not regarded as adequate so as to prevent the issuing of the writ if it does not afford the particular right to the party aggrieved, or if its slowness is likely to produce immediate injury or mischief. 32 Cyc. 617; Bell v. District Court, 28 Nev. 280; State v. District Court, 146 Pac. 743. "The statute does not say that the writ will not issue in any case where there is an appeal. There must not only be a right of appeal, but the appeal must furnish some adequate remedy, in order to prevent the issuance of the writ." Havemeyer v. Superior Court, 24 Pac. 121; Reclamation District v. Superior Court, 154 Pac. 845; Ex Parte Montgomery L. & T. Co., 65 So. 403; White v. Superior Court, 58 Pac. 450.

"The writ should issue for the furtherance of justice and security, and for regularity in judicial proceedings, in cases where none of the ordinary remedies provided by law are applicable." Walcott v. Wells, 21 Nev. 51. "The writ should freely issue whenever it is necessary for the protection of the rights of a litigant, and he has no plain, speedy and adequate remedy." Silver Peak v. District Court, 33 Nev. 124.

A writ of prohibition may properly issue where a court, although having conceded jurisdiction of the parties and the subject-matter of a cause, is proceeding therein to do something in excess of its jurisdiction. Rev. Laws, 5703. "If the inferior tribunal is assuming to act where it has no jurisdiction of the subject-matter of the proceeding, or if it has jurisdiction thereof, but is exceeding its legitimate powers in the particular matter, the writ will lie." 32 Cyc. 605; Bruner v. Superior Court, 28 Pac. 341, 345; High, Extr. Legal Rem., 3d ed., sec. 781; State v. Fort, 109 S. W. 737; State v. McQuillan, 165 S. W. 713; Carter v. Bolster,

98 S. W. 105. "A court that proceeds in the trial of a cause against the express prohibition of a statute is exceeding its jurisdiction and may be prevented by prohibition from this court." Hayne v. Justice Court, 23 Pac. 125.

"Prohibition is as properly granted where the inferior court acts upon a false view of the law fixing its jurisdiction or a misconstruction of a statute conferring jurisdiction, as where it arbitrarily usurps jurisdiction in total disregard of law." Baldwin v. Cooley, 1 S. C. 256; Thomas v. Mead, 36 Mo. 232; State v. Superior Court, 36 Pac. 443; State v. Clendenning, 112 N. E. 1029; State v. Kimmel, 183 S. W. 651.

The rule that consent cannot give jurisdiction is subject to the qualification that the parties may waive rights and privileges and authorize the court to do what it could not do without their consent. 11 Cyc. 675; Treadway v. Wilder, 12 Nev. 108; McComb v. District Court, 36 Nev. 417.

It is not claimed that legal and equitable cause of action may not be united in one action, if they belong to any one of the classes which the legislature has said may be united, and affect all parties to the suit. The statute which classified the causes of action which may be united prohibits the joining of those not authorized by it. State v. Yellow Jacket S. M. Co., 14 Nev. 237. Where it appears by uncontested facts that causes of action are improperly united, the court has no discretion in the matter, and the lack of discretion is the main test whether its action in trying the cause upon this complaint is in excess of its jurisdiction. Bruner v. Superior Court, 28 Pac. 341.

"It would be going a great way for this court to say defendant is not injured by being sued in a mode not only not authorized, but, if he object, expressly forbidden by the statute." Stark v. Wellman, 31 Pac. 260.

The distinction between actions growing out of a contract and those arising from tort, this court has said,

is as necessary to be maintained under our system of pleading as it was at common law. Knickerbocker & N. S. M. Co. v. Hall, 3 Nev. 196.

*Norcross & Thatcher,* for Respondent:

The complaint states but one cause of action, although several different kinds of relief are asked for. Alexander v. Winters, 24 Nev. 143. The other causes of action are equitable in character, and admittedly could be joined together in one action, and they can be joined with the first cause of action. The character of the relief demanded is not a test for the determination of the proper joinder of actions.

There is but one cause of action. "A declaration, complaint or petition by which name the pleading may be designated under the prevailing practice, which seeks to enforce the remedial right arising from the infringement of the single primary right by a single wrong constitutes but one cause of action. * * * " 23 Cyc. 380. "It is not necessary that the wrong shall consist of a single act, or that the resulting injuries consist of but a single element; and the amount sought to be recovered may be made up of several items. Under these principles but a single cause of action is stated in the petition seeking the enforcement of a single contract." 23 Cyc. 381.

A joinder takes place on contract when separate and independent contracts are set forth separately as causes of action, and there is no joinder when all that is sought is separate relief for each separate breach of one contract. 23 Cyc. 283, 284, 383, 385.

The writ of prohibition is to be issued only in cases of extreme necessity, and where wrong, damage, and injustice are likely to follow the action of the inferior tribunal. Lonkey v. Wells, 16 Nev. 271; Gardner v. Gardner, 23 Nev. 207; Low v. Crown Point M. Co., 2 Nev. 75; Walcott v. Wells, 21 Nev. 51; Turner v. Langan, 29 Nev. 281; State v. District Court, 28 Nev. 323.

By the Court, SANDERS, J.:

The petitioners ask for writ of prohibition to restrain the Second judicial court of the State of Nevada, in and for the county of Washoe, from proceeding to try a civil action pending therein against the petitioners, upon the ground that the said court, unless restrained, will transcend the limits of its jurisdiction. Upon the filing of the petition an order to show cause was issued, and the return thereon consists of a general demurrer and answer; both raising the question whether the facts alleged show any excess of jurisdiction for which the petitioners have no other adequate remedy. Rev. Laws, 5708, 5709. It appears that the petitioners interposed a joint and separate demurrer to the complaint, which was overruled, and, instead of answering, as required by the court's order, they have applied for this writ.

Though other questions are ably discussed, the only one to be considered in this proceeding is the propriety of our granting the writ, in view of the long line of decisions holding that the writ ought not to issue where there is another and adequate remedy. Unless the case as made by the petition is to be distinguished from those cases, we should hesitate to entertain this application. That portion of the demurrer material here, and to which this inquiry is directed, is that there is a misjoinder of causes of action in the complaint, in that it attempts to set forth:

"(a) A cause of action on an express contract; (b) a claim against specific personal property; (c) a claim against a trust by virtue of a contract, or by operation of law—which said causes of action, so stated, belong to more than one of the classes which may be joined in the same action and do not affect all the parties to the action."

1, 2. The demurrer involves a discussion of section 97 of our practice act (Rev. Laws, 5039) which permits causes of action to be united when they all belong to one only of the seven subdivisions enumerated in the section

and affect all the parties to the action. The only source of authority for any pleading, and the rules for the construction thereof, are drawn from our practice act. It provides that all the forms of pleading in civil actions and the rules by which the pleadings shall be determined shall be those prescribed by the act. Rev. Laws, 5036. It also provides that in the construction of a pleading, for the purpose of determining its effect, its allegations shall be construed with a view to substantial justice between the parties. Rev. Laws, 5065. We are mindful that our constitution and statute have broken down the barrier of the common law, in so far as the form of a civil action is concerned. Rev. Laws, 329, 4943. Nevertheless, parties must find their authority for the form of their pleading in the practice act. Rev. Laws, 5036. It is the general rule that a complaint shall contain but a single cause of action (14 Standard Ency. Proc. 668), and two or more causes of action cannot be united in the same complaint, unless the joinder is authorized by the practice act (State v. Yellow Jacket S. M. Co., 14 Nev. 220; Dyer v. Barstow, 50 Cal. 652).

3. Section 97 of the practice act provides:

"The plaintiff may unite several causes of action in the same complaint, when they all arise out of:

"1. Contract, express or implied; or    *    *    *

"3. Claims to recover specific personal property, with or without damages for the withholding thereof; or

"4. Claims against a trustee, by virtue of a contract, or by operation of law;    *    *    *

"But the causes of action so united shall all belong to only one of these classes and shall affect all the parties to the action, and not require different places of trial, and shall be separately stated.    *    *    * "

The object of this section is said to be to avoid a multiplicity of actions, and is entitled to a liberal construction, with a view to effect its object. State Bank v. Lanam, 34 Okl. 485, 126 Pac. 220; Cincinnati, etc., R. Co. v. Cooke, 37 Ohio St. 265. But a legitimate construction will not permit of causes of action being united

contrary to the limitations or restrictions contained in
the act. The general purposes of its limitations is to
secure and maintain a regular and orderly administra-
tion of justice. Their particular purpose is to avoid a
multiplicity of distinct grievances, diverse and incongru-
ous matters, whereby a defendant would be subjected
to the embarrassment and difficulty of meeting on the
trial widely different issues. Horton v. Equitable Life
A. Society, 35 Misc. Rep. 495, 71 N. Y. Supp. 1060. But
a party who seeks to take advantage of its limitations is
not entitled to such technical construction of the plead-
ing as would defeat the general object of the privilege
afforded the complainant.

4-6. If the pleading in this case were attacked on one
of the general grounds of demurrer, such as that it fails
to state facts sufficient to constitute a cause of action,
there would be much force to this contention. State v.
District Court, 38 Nev. 323, 149 Pac. 178. Properly
speaking, the office of the writ of prohibition is not to
correct errors, but to prevent courts from transcending
the limitation of their jurisdiction in the exercise of
judicial power. Low v. Crown Point M. Co., 2 Nev. 75.
The limitations are negative in character, and expressive
of the legislative intent that a party who seeks to avail
himself of the privilege to unite his causes of action
must square his pleading with the rules prescribed by
the practice act. State v. Yellow Jacket S. M. Co.,
supra. Where an existing right or privilege is subject
to regulation by a statute in negative words, the mode
so prescribed is imperative (2 Lewis's Sutherland, Stats.
Constr. 633) ; and where a statute has imposed restric-
tions under which a court, or judge thereof, may act in
matters otherwise within its jurisdiction, and those
restrictions are disregarded, the party aggrieved may
have a remedy by prohibition (People ex rel. v. Nichols,
79 N. Y. 591; Quimbo Appo v. People, 20 N. Y. 531).

7. We do not apprehend that the rule stated extends
to the correction of errors for a mere irregularity in the
exercise of an authority inherent in a court; but, where

an authority otherwise inherent is limited by statute, the court which acts differently from the prescription of the act exceeds its jurisdiction, and is therefore liable to prohibition. McDonald v. Elfe, 1 Nott & McC. (S. C.) 504. Unquestionably a court that proceeds in the trial of a cause against the express prohibition of a statute exceeds its jurisdiction. Hayne v. Justice Court, 82 Cal. 284, 23 Pac. 125, 16 Am. St. Rep. 114.

8. Entertaining the views the question remains: Has the respondent exceeded the limits of its jurisdiction in proceeding with the trial of this cause contrary to the prohibitions contained in section 97 of our practice act? A demurrer to a complaint for misjoinder of causes of action involves the concession that it states two or more good causes of action. Pomeroy's Code Rem., sec. 342. We shall therefore consider the grounds of the demurrer upon this assumption, without expressing any opinion as to the legal sufficiency of either of the causes of action or upon the merits of this lawsuit.

9. The complaint is too lengthy to allow of a minute synopsis of its allegations. It contains five causes of action, separately stated, against both of the defendants, and we are of the opinion that it states a cause of action aimed against one of the defendants, though not separately stated. We have examined with care the able analysis of the facts stated in the complaint made by counsel for the petitioners, without being able to reach the conclusion contended for by them that the causes of action separately stated against both of the defendants belong to more than one only of the classes enumerated in section 97. Therefore we conclude that the demurrer to the petition on this particular ground should be sustained. In view of that lack of certainty and definiteness which should characterize a pleading that seeks redress for numerous wrongs of a different nature and various remedies adopted to meet the circumstances of the case, we have reached this conclusion with some misgivings as to its correctness; and as the point discussed is likely to have some material bearing on further

proceedings in the cause, we shall state briefly our views of the pleading.

The first cause of action is confessedly to recover from the defendants $30,000 as damages for the breach of a contract of employment. The second and third causes of action are to establish the plaintiffs' alleged right to a specific portion of a number of shares of valuable mining stock in different companies, alleged to have been acquired and held by the defendants in virtue of their contractual relationship with the plaintiffs, and in the event that the stock cannot be delivered that plaintiffs be given judgment for its value, aggregating the sum of $209,233. The fourth cause of action is not discussed. The fifth cause of action seeks a discovery and an accounting from the defendants of all their dealings with certain property of the plaintiffs intrusted to them under an executory contract. Fraud is charged in the creation of the contractual relation between the plaintiffs and the defendant Margrave. This feature of the pleading will be dealt with in the discussion of that portion of the demurrer which states that the causes of action do not affect all the parties. Fraud and deceit are also charged in the management and disposition of the property embraced in the contract.

The defendants, in so far as they are jointly liable, are proceeded against as agents, and not as trustees. The second and following causes of action disclose such wilful violation of the fiduciary relationship between the parties imposed by the contract that it would be unconscionable for the defendants to withhold from plaintiffs their alleged portion of all of the property in any manner acquired in virtue of their contractual relations. Contract, then, being the foundation of the duties imposed upon the defendants, it is clear that the breach of those duties must be regarded as arising out of contract and therefore as within subdivision 1 of section 97, which embraces all causes of action arising out of contract, either express or implied. But it does not follow that the complaint contains but one cause of action. We

are impressed that it clearly discloses, and that it was the intention of the pleader to state, independent and distinct causes of action. Should the defendants be brought to trial on the pleading as it now stands they would be entitled to all the advantages incident to a pleading that contains two or more causes of action properly joined.

Another more difficult question remains to be considered. An objection is stated in the demurrer that the causes of action do not affect both of the defendants. This branch of the demurrer is both difficult and perplexing, because of the appetite of the pleader. A technical construction of the pleading involves a multitude of subjects, parties, contract, tort, fraud, deceit, damages, agencies, nondisclosure, trust in invitum, voluntary trust, discovery, accounting, receivers, and injunction. When, however, the pleading is denuded of its narrative averments, it affirmatively appears that on December 21, 1912, the defendant Walser was employed by plaintiffs in his professional capacity as an attorney at law, and in the contract of employment he was constituted the plaintiffs' attorney in fact to reduce to possession, by litigation or otherwise, all of plaintiffs' rights and interests, vested or contingent, in certain mining companies and properties named in the contract, without cost or expense to plaintiffs. As compensation for his services, the plaintiffs by the contract of employment sold and conveyed to the said defendant, his heirs or assigns, an undivided two-thirds interest in all of the property embraced in the contract and it was expressly stipulated therein that the plaintiffs were to receive one-third of everything recovered under the contract.

At or about the time the contract was executed, it is charged that the defendant Walser falsely and fraudulently represented to plaintiffs that it would require large sums of money to accomplish the purposes of the agreement, and falsely and fraudulently represented that it would be necessary to have associated with him

one of sufficient means to do the things required of him to be done under the contract, and that he falsely and fraudulently represented that his codefendant Margrave was such person. It is charged that the defendant Margrave knew of the false and fraudulent representations made by his codefendant as to his financial ability, and acquiesced therein. It appears that the defendant Walser represented at this time that it was necessary that plaintiffs sell, assign, and transfer to Walser a two-thirds interest in the property, because of and in consideration of the money to be advanced by Margrave, for which consideration he (Walser) would have to convey to Margrave a one-third interest in the contract; that thereafter the defendant Walser, by a purported assignment in writing, attempted to convey to Margrave an undivided one-third interest of all the rights of the plaintiffs in all the property named in the contract with Walser.

It is charged, as a conclusion, that by reason of the false and fraudulent representations of the defendants, and that by reason of the fact that the defendant Margrave at the time of the representations was without any money whatever, the sale to Walser of more than a one-third interest in plaintiffs' property named in the contract was without any consideration whatever. It appears that the defendant Margrave acted with his codefendant Walser under the contract as owner of a one-third interest in the property of plaintiffs, and in the course of their joint dealings under the contract there came under the control of the defendants 291,000 shares of stock in one of the companies named in the contract. It is the prayer of the complainants that they be given judgment for the sum of $30,000, as damages against the defendants for their failure and neglect of duty in not protecting from loss property intrusted to them in virtue of the contract of December 21, 1912. We do not apprehend that it is the contention of plaintiffs that a joint and several judgment could be had against the defendants under the pleading in its present form. The defendants are jointly liable, or not

at all, for the breach of duty complained of. If, then, on the face of the complaint, it should appear that the defendants are not jointly liable for the loss of the stock as alleged, and no several judgment could be had against them, no legal reason is suggested why they, or either of them, should be subjected to the cost and inconvenience of a trial on the first cause of action. If the facts as above outlined be true, they clearly negative any duty or promise on the part of the defendant Margrave to protect the plaintiffs' property from loss.

It is charged that that particular portion of the contract whereby Margrave acquired an interest in its subject-matter was fraudulent in its inception, and that by reason of the fraud perpetrated by his codefendant Walser, and acquiesced in by him, he became the owner of a one-third interest in the contract, that all of his acts in conjunction with his codefendant's were tortious, and that the alleged attempted assignment to him of a one-third interest in the property embraced in the contract was without consideration; and the plaintiffs demand judgment that they be decreed owners of one-half of the two-thirds interest originally sold and conveyed to Walser under the contract. The effect of the relief demanded is to repudiate and disavow Margrave's interest in any of the property alleged to have been acquired by the defendants under the contract. The effect of these allegations is equivalent to an admission that Margrave owed no duty to plaintiffs to protect their property from loss. The relation between the plaintiffs and the defendant Walser was of a fiduciary character; that of the defendant Margrave was tortious; yet it is sought to mulct him in damages for the breach of a fiduciary duty, when it clearly appears that none is shown, but, on the contrary, is expressly disaffirmed.

10. It is just such a situation as this that section 97 of the practice act is designed to meet. Why should the defendant Margrave be subject to the cost, inconvenience and necessity of resisting an action against him which could result only in a voidable judgment? Under

the liberal rule of construction enjoined for the purpose of determining the effect of a pleading (Rev. Laws, 5065), we uphold the causes of action separately stated in the complaint upon the ground that they were founded upon a contract equally binding under the circumstances upon both of the parties defendant. But this conclusion does not deprive the defendant Margrave of the benefit of his demurrer upon the ground that the causes of action do not affect both of the defendants.

11. It is obvious that by the fifth cause of action the plaintiffs seek an accounting from the defendants upon the ground of their fiduciary relation arising from their original contractual relation. That an agent, or one standing in such relation, can be brought to account with his principal for moneys and property received cannot be doubted; but in order to uphold said action it must appear that the transaction arose out of such relation. If, therefore, no such contractual relation existed between the plaintiffs and the defendant Margrave as created a confidential or trust relation, but, on the contrary, one tortious in its nature, there should be judgment for the defendants on the demurrer.

But it is strenuously urged that as one of the causes of action is at law and the others are equitable in their nature, and a court of equity having acquired jurisdiction over the parties and the subject-matter, and as the relief obviously extends to property in the hands of both defendants, equity will settle and adjust in a single action all the rights and interests incapable of being tried and disposed of by a single judgment at law. We are not called upon to determine whether the causes of action separately stated and the one intermingled therewith are properly joinable under the old equity practice. The petitioners are here litigating a rule of pleading— one that negatives and limits the general power or authority of the respondent court in a proceeding under it. In the case of State v. Yellow Jacket S. M. Co., supra, the question was asked:

"Is our code 'the only source of authority from which rules of pleading may be drawn, and have its methods so completely supplanted those which preceded it that the latter can no longer be appealed to as possessing of themselves any force and authority?' "

The court answered this question by holding that a complaint, answer, or demurrer is sufficient when it squares with the rules prescribed by the practice act, and not otherwise. But regardless of the statute, we have been referred to no rule of practice, at law or in equity, which justifies the course of the plaintiffs in this action. It is true that section 97 does not provide that causes of action, to be united, must be consistent; but it is obvious that the complainants state a cause of action for the breach of a contract and a distinct and independent cause of action for fraud in its procurement. This fraud is blended and intermingled with the whole structure of the complaint, and each of its causes of action, so much so that by reason thereof the plaintiffs were induced to demand its rescission in part as to both of the defendants and in its entirety as to one of the defendants, and that two-thirds of the property acquired under it be decreed to be that of the plaintiffs, and in case the contract be not rescinded, that the defendants be held jointly liable, both at law and in equity, for its breach.

12. We are aware that a court of equity is ever the master of frauds and that its doors stand open to relief against it; but it would be unjust for the plaintiffs to try the experiment in this action of rescinding the contract for fraud in its procurement, and, failing in this, to recover damages at law for its breach and relief in equity for the violation of a fiduciary obligation implied from the contractual relationship of the parties created by the contract. One of these positions negatives the other. Though the plaintiff is not confined to one kind of relief, yet each prayed for, though differing in character, should be consistent. The principle that forbids the

union of inconsistent causes of action should prevent a demand for inconsistent relief in any one cause. Bliss on Code Pleadings, sec. 164.

We are of the opinion that the rule of pleading prescribed by section 97, designed as it is for the regular and orderly administration of justice, is not to be departed from; and as the writ of prohibition is designed "to prevent the violation of some fundamental principle of justice or the transgression of the bounds prescribed by law," should the respondent undertake to try this cause on the pleading in its present form, it would proceed against the spirit and the letter of the statute, and the writ as applied for should be granted.

It is so ordered.

McCARRAN, C. J., concurring in the order:

I concur in the order, and in so much of the opinion of Mr. Justice SANDERS as supports the issuance of the writ by reason of the failure of the causes of action to affect both of the defendants. I am not in accord with the views of Mr. Justice SANDERS as expressed in his opinion relative to the question of misjoinder of causes of action. Having originally prepared a tentative opinion for the court, in which I dealt exclusively with two questions involved in this proceeding, I deem the matter of sufficient importance to annex my opinion, together with a statement of facts essential to a clear understanding of the pleadings and principles involved.

### STATEMENT OF THE FACTS

The complaint sets up five causes of action. By the first cause of action it is related that during the year 1912, and prior to the 2d day of July of that year, the plaintiffs, R. S. Page and Marie Olive Page, had invested in and had loaned or advanced for the benefit of the Indian Consolidated Mines Company the sum of $10,000, on account of which investment and advances the Pages became the owners of, or asserted ownership to, a large amount of the capital stock of the Indian Consolidated Mines Company and other mining property and interests at the town of Rochester, county of Humboldt, State

of Nevada. On or about the 2d day of July, 1912, the Pages consulted with Mark Walser, an attorney at law, and one of the defendants here, relative to their rights in the Indian Consolidated and other property interests in and about Rochester. Walser advised suit and accepted a retainer of $150 for the institution of the same.

During the month of September, 1912, it is alleged: That Walser, as attorney for the plaintiffs, advised that proceedings be instituted in the United States District Court, at Carson City, for the purpose of having the Indian Consolidated Company declared insolvent and bankrupt. This advice appears also to have applied to the Limerick Consolidated Mines Company and the Little Indian Mining Company, in all of which the Pages were more or less interested. That on such advice Walser received from the Pages the sum of $180 for the purpose of accomplishing the results advised. On the 21st day of December, 1912, it is alleged that Walser advised that he could settle all disputes between the Pages and the Indian Consolidated Company, and upon such advice the Pages entered into a written agreement with Walser, as their attorney, by the terms of which the Pages assigned, sold, and conveyed to him an undivided two-thirds of their interest in and to all stocks, claims, debts, or demands, whether vested or prospective, in the Indian Consolidated Mines Company of South Dakota, the Indian Consolidated Mines Company of Nevada, the Limerick Mines Company, and the Limerick town site, and appointed and instituted Walser their attorney in fact, for the purpose of representing them in any action at law or otherwise, or in any proceeding necessary to reduce their interests to possession.

By the terms of this agreement Walser was to commence and maintain such actions at law as might be necessary to clear the title to the interests owned by plaintiffs, or which they claimed to be entitled to, in the several companies mentioned in the contract, such actions to be carried on at the expense of Walser; he further agreeing to defend all actions that might be

instituted against the plaintiffs by reason of their interests in the said companies or their connection therewith, and at his own expense to protect the property, free it from liens, and protect it from other claimants, the contract further providing that the Pages were to have an undivided one-third interest in and to everything recovered from or on account of the rights or interests which they had in any or all of the several companies named in the contract.

It is alleged that at the time of the execution of this contract the defendant Walser made false and fraudulent representations to the Pages to the effect that in order to conduct the litigation, or other proceedings or negotiations, necessary to establish the rights of plaintiffs and reduce the same to possession, large expense would necessarily be incurred, and that it would be necessary for him to have associated with him a man of considerable means, who would advance the money necessary to carry on such litigation, negotiations, or dealings necessary to establish the interests of plaintiffs and reduce the same to possession. It is alleged that Walser then and there introduced his codefendant in this action, Frank Margrave, to the Pages, representing that Margrave was a man of means and possessed the necessary finances to carry on such litigation and other negotiations or dealings to accomplish the purpose of the agreement.

There are a number of allegations in the first cause of action as to the false and fraudulent representations alleged to have been made by Walser relative to the financial standing of Margrave. By the representations it is alleged that the Pages were led into the sale, assignment, and transfer of two-thirds of their interest and property rights in the various companies mentioned in the agreement. There is also an allegation as to the act of the defendant Walser in attempting to assign to Margrave one-third of the interests acquired by him. It is alleged that on the 21st day of December, and at

or about the time of the execution of this agreement, Walser demanded of plaintiffs, and as their attorney informed plaintiffs, that it would be necessary for him to have in his possession all of the stocks and securities of the plaintiffs in and to all of the mining properties mentioned in the agreement, and, by reason of the demand and representation thus made by Walser, the Pages delivered to him stocks in the mining companies mentioned, to the amount of 689,000 shares, besides other securities, inclusive of 6,000 shares of the capital stock of the Limerick Consolidated Mines Company.

It is alleged that by virtue of the agreement the defendants Walser and Margrave came into control of all the stock, property rights, and interest of all of the North Rochester Mines Company, the same being the property of the Pages. It is alleged that in February, 1913, in settlement of a dispute theretofore existing between the Limerick Consolidated Mines Company and the North Rochester Mines Company, the latter conveyed to the former all its right, title, and interest in and to the Limerick, Condee, and Plainview group of mining claims at Rochester, in consideration for which conveyance the Limerick Consolidated Mines Company agreed to issue and did issue to the North Rochester Mines Company 300,000 shares of the capital stock of the Limerick Consolidated, together with a cash payment of $2,500, which said cash payment was upon the demand of Walser and Margrave paid directly to them; that the receipt of this $2,500 was by Walser and Margrave kept from the knowledge of the Pages, and the latter did not become apprised of the same until the month of February, 1917; that during the month of March, 1913, Walser, acting for the North Rochester Mines Company, entered into an agreement to pool 291,000 shares of the Limerick Consolidated Company's stock until September 15, 1913. It is alleged that at or about the time of the making of the agreement between the Pages and Walser, the North Rochester Mines

Company had an outstanding indebtedness amounting approximately to $500; that at the time of the making of the settlement between the North Rochester Mines Company and the Limerick Consolidated Mines Company it was agreed as part of the consideration that, out of the $2,500 received by Walser and Margrave as representatives of the North Rochester Mines Company, they would pay all of said outstanding indebtedness.

The first cause of action then proceeds to set forth the institution of attachment proceedings by an outstanding creditor of the North Rochester Mines Company, the levy of a writ of execution on the 291,000 shares of the Limerick Consolidated, and the sale of the same to satisfy the execution. It is alleged that Walser and Margrave at all times had full knowledge of these proceedings, including the attachment, execution, and sale under execution of the 291,000 shares of stock, but failed and neglected and refused to pay the amount of the claim, or to pay the judgment, or to defend the action, and failed to notify the Pages, or either of them, of the existence of such proceedings; and in this respect it is alleged that the defendant Walser notified the Pages that the 291,000 shares of stock of the North Rochester Consolidated was still in the hands of the pooling trustee under the pool agreement. It is by reason of the loss accruing to the Pages, growing out of the attachment, execution, and sale under execution of the 291,000 shares of stock of the North Rochester Mines Company, that damages are claimed in the first cause of action for the sum of $30,000.

The second cause of action rests on the acquisition of certain shares of stock in the Nevada Packard Mines Company by Walser and Margrave, which acquisition it is declared was accomplished by the purchase of interests in other mining properties represented by stock of the Nevada Packard Mines Company, which said purchase and interest was paid for out of the $2,500 received by Walser and Margrave as a part consideration of the settlement between the North Rochester Mines Company and the Limerick Consolidated.

The third cause of action rests on the acquisition by Walser and Margrave of certain shares of stock in the Rochester Mammoth Mines Company, which acquisition, it is alleged, was paid for by moneys received by Walser and Margrave in the settlement between the North Rochester Mines Company and the Limerick Consolidated.

The fourth cause of action is for the recovery of 6,000 shares of the capital stock of the Limerick Consolidated Mines Company, delivered by the Pages to Walser at his instance, request, and demand, on the 21st day of December, 1912.

In the fifth cause of action it is alleged by virtue of the contract of December 21, 1912, and by reason of the stocks and securities delivered to Walser by the Pages on that day, and by reason of the matters and things directly growing out of the contract of that date, Walser and Margrave have acquired large property interests in various unnamed mining companies, operating in Rochester mining district, and have received on account thereof large sums of money, none of which property interests or money so obtained have ever been accounted for by defendants or either of them to plaintiffs, but, on the contrary, such have been kept by defendants for their own use and benefit. The value of the property thus acquired is alleged to be in the neighborhood of $200,000.

The plaintiffs pray for judgment for damages based on the first cause of action in the sum of $30,000; for the delivery of 375,000 shares of the capital stock of the Nevada Packard Mines Company, or, in the event such stock cannot be delivered, for the value thereof in the sum of $191,250, based upon the second cause of action; for the delivery to plaintiffs of 177,333 shares of the capital stock of the Rochester Mammoth Mines Company, or, in the event such stock cannot be delivered, for judgment in the sum of $17,733.30, the value thereof, based on the third cause of action; for the delivery of 6,000 shares of the capital stock of the Limerick Consolidated Mines Company, or, in the event delivery

thereof cannot be had, for the value thereof in the sum of $900, based upon the fourth cause of action.

There is a fifth cause of action, in which, if we read the complaint correctly, plaintiffs seek to require defendants to render an accounting of all other properties and moneys secured by defendants by or through or by virtue of the contract of December 21, 1912.

A demurrer was interposed in the court below, on the ground that the causes of action in the complaint set forth were improperly united, setting up, among other things, that there is a misjoinder of causes of action in the complaint; and that it attempts to set forth: (a) A cause of action upon express contract; (b) a claim to recover specific personal property; (c) a claim against a trust by virtue of a contract or by operation of law. An order was made, overruling the demurrer and directing the defendants to answer. A writ of prohibition was sued out in this court by defendants to prohibit the trial court from proceeding further.

McCARRAN, C. J., after stating the facts:

The complaint filed in the district court in this matter set up five separate causes of action, the first of which consists of thirty-four paragraphs relating the history of a contractual relation established between the plaintiffs and the defendants, resulting, as it is averred, in a failure on the part of the defendants to properly protect the interests of plaintiffs, by reason of which said failure plaintiffs were damaged in the sum of $30,000. This first cause of action may properly be said to be for damages arising out of failure to perform under express contract. The second and third causes of action have as their object the establishment of a trust relationship and the recovery of specific personal property or damages for conversion of the same. The fourth cause of action has as its object the enforcement of a claim against a trustee by virtue of a contract.

Section 97 of our civil practice act (Rev. Laws, 5039) is as follows:

"The plaintiff may unite several causes of action in the same complaint, when they all arise out of:

"1. Contracts, express or implied; or,

"2. Claims to recover specific real property with or without damages for the withholding thereof, or for waste committed thereon, and the rents and profits of the same; or,

"3. Claims to recover specific personal property, with or without damages for the withholding thereof; or,

"4. Claims against a trustee, by virtue of a contract, or by operation of law; or,

"5. Injuries to character; or,

"6. Injuries to person; or,

"7. Injuries to property—but the causes of action so united shall all belong to only one of these classes and shall affect all the parties to the action, and not require different places of trial, and shall be separately stated; *provided, however,* that an action for malicious arrest and prosecution, or either of them, may be united with an action for either injury to character or to the person."

Section 98 of our civil practice act (Rev. Laws, 5040) provides:

"The defendant may demur to the complaint within the time required in the summons. to answer, when it appears upon the face thereof, either:

"1. That the court has no jurisdiction of the person of the defendant, or the subject of the action; or, * * *

"5. That several causes of action have been improperly united. * * *"

In nearly all of the jurisdictions where code pleading is established we find statutory provisions at least somewhat similar to that of our civil practice relative to the joinder of causes of action. We find the law applicable to the subject stated thus:

"In a majority of the states the joinder of different causes of action is a matter of statutory regulation. Under the codes and statutes, as at common law and in equity, the general rule is that the complaint or petition shall contain but a single cause of action. To this rule

there are certain exceptions specified which have for their purpose the prevention of a multiplicity of actions. Generally, therefore, causes of action cannot be joined unless the joinder is authorized by the code or practice act; the common law furnishes no criterion. * * * The test under the code, for determining whether several causes of action may be joined is very simple, as all the causes of action united must belong to the same subdivision of the code section relating to joinder. Any number of causes of action, which do not offend the rules as to affecting the parties to the action, as to place of trial, etc., may be joined if all arise out of one of the enumerated classes, but they need not be joined, as it is a privilege allowed the pleader of which he may avail himself in his discretion." 14 St. Enc. Proc., p. 668.

In many jurisdictions, of which we find New York to be one (section 484, Civ. Proc. N. Y.), the code of civil procedure permits the pleader to unite causes of action arising out of the same transaction or transactions connected with the same subject of action, and this provision appears to have been incorporated into the law to avoid the very condition which in our judgment prevails in the matter at bar. It is settled to a degree which in our judgment approaches the distinction of finality that, where statutes prescribe causes of action which may be united, such causes only may be joined as are enumerated by the statutes. This was explicitly declared by the Supreme Court of California in the case of Keller v. Hicks, 22 Cal. 457, 83 Am. Dec. 78, and again by the Supreme Court of Kentucky in the case of Louisville and Nashville R. R. Co. v. Commonwealth, 102 Ky. 300, 43 S. W. 458, 53 L. R. A. 149.

Prior to the year 1897 the civil practice act of the State of California was identical to ours with reference to the joinder of actions. In the case of Stark v. Wellman, 96 Cal. 400, 31 Pac. 259, we find Commissioner Temple discussing the subject under the California code thus (the views of the commissioner were adopted by the supreme court) :

"The classification of causes of action which may be united under section 427, Code Civ. Proc., while intended to be founded upon manifest reason, is nevertheless to some extent arbitrary, and differs materially from that which prevails in most of the states. In nearly all, for instance, causes of action arising out of the same transaction, or transactions connected with the same subject of action, may be united. Had this been in our code, it would have authorized the joinder of the causes of action in this case. It was in the code from which it is supposed ours was copied, and, if so, was, of course, designedly omitted. This court may possibly think the rule which prevails elsewhere is preferable, and that, if the lower courts follow such rule, no one would be injured; and thus section 427, Code Civ. Proc., might be practically repealed under section 475."

The matter there under consideration presented two causes of action growing out of one and the same transaction. The first was for damages growing out of the careless conduct of the defendant in attempting to care for and redeliver a package received under contract. The second cause of action was predicated on the same contract, but alleged that the plaintiff was the owner and entitled to the possession of the package, which being in the possession of the defendant, he had converted to his own use. The demurrer alleging misjoinder of causes of action was sustained, on the ground that the first cause of action was for breach of contract and the second was founded upon tort.

Subsequent to the decision in the case of Stark v. Wellman, and in 1897, the legislature of the State of California amended its civil practice act in this respect, and by the amendment it was provided that:

"Claims arising out of the same transaction or transactions connected with the same subject of action, and not included within one of the foregoing subdivisions of this section may be united."

In the case of Boulden v. Thompson et al., 21 Cal. App. 279, 131 Pac. 765, we find the question again passed

upon by the Supreme Court of California, and there the court had before it a complaint in three counts, each one stating a cause of action. The first alleged a cause of action based upon a breach of covenant contained in a lease of real and personal property, it being alleged that during the term of the lease defendants wrongfully and forcibly ejected plaintiff from the leased property, to his damage in a specified sum. The second cause of action alleged that, at the time the defendant wrongfully entered upon and took possession of the leased property, plaintiff owned and had in the dwelling-house certain household furniture and other personal property, of which defendant took possession and refused to deliver to plaintiff, to his damage in the sum specified. The third cause of action alleged that at the time and in the unlawful act of dispossessing plaintiff, and as a part of the acts of defendant in ejecting plaintiff from the premises, they swore at plaintiff and his wife, called him vile names, threatened his life, etc., thereby causing the plaintiff great mental worry and pain, by reason whereof he was damaged in a specified sum. The case of Stark v. Wellman, supra, was reviewed by the court, and the language of Commissioner Temple in the latter case was referred to, after which the court, after quoting the language of the amendment to the code of civil procedure, said:

"If the causes of action so united are within any one of the first seven subdivisions of the section, they may, by reason of that fact, be united. If not so included (and in this case they were not), they may nevertheless be united by virtue of subdivision 8, if they arise out of the same transaction or transactions connected with the same subject of action."

The Supreme Court of Washington, in the case of Clark v. Great Northern Ry. Co., 31 Wash. 658, 72 Pac. 477, referring to the statute of the State of Washington, which provides that the plaintiff may unite several causes of action in the same complaint when they arise out of (1) contract, express or implied, or (2) injuries

with or without force to the person, held that such a
statute merely authorizes the joinder of causes of like
character; that is, that any number of causes upon
contract might be united in one complaint, when the
parties and the place of trial are the same; that any
number of causes of action for injuries with or without
force might be united by the parties, when the places of
trial were the same. But it was there emphatically laid
down that an action on contract could not be united with
an action on tort.

In the case of Reynolds v. Lincoln, 71 Cal. 183, 9 Pac.
176, 12 Pac. 449, the Supreme Court of California was
considering the effect of a demurrer for misjoinder of
causes of action, where the complaint, sought by the
first count to quiet title under a section of the code of
civil procedure, and in the second count, referring to
the same premises and to the same parties, sought to
have the defendants convey by reason of the existence
of a trust relation. The court, referring to the subdi-
visions of the code of California identical with ours,
held that, as causes of action coming under these dif-
ferent classes cannot be united in the same action, there
was therefore a misjoinder.

In the case of Bran v. Christopher et al., 27 Cal. App.
741, 151 Pac. 172, the District Court of Appeals for the
Second District of California had occasion to consider
the subject here under consideration, and there held that
under subdivisions 1, 4, and 8, section 427, of the code
of civil procedure, which is in all respects the same as
ours (Rev. Laws, 5039), a cause of action arising out of
contract and one based on claim against a trustee by
virtue of a contract or by operation of law could not
properly be joined. While the facts there are not like
those in the case at bar, the doctrine enunciated is none
the less applicable.

The Supreme Court of New York, in the case of
Hannahs et al. v. Hammond et al., 19 N. Y. Supp. 883,
referring approvingly to the former decision of that court
in Keep v. Kauffman, 56 N. Y. 332, reenunciated the

rule that causes of action in tort and in contract could not be joined, except when arising out of the same transaction or transactions connected with the same subject of action. We refer to this case solely to bring out the fact that the exception there mentioned rests exclusively on the peculiar classification of the New York code, providing, as does the amended code of California, that claims arising out of the same transaction, or transactions connected with the same subject of action, and not included within one of the other subdivisions of the section, may be united.

In the case of Wiles v. Suydam, 64 N. Y. 173, the complaint set up two causes of action, one against the defendant as a stockholder liable for the debts of a corporation to the amount of his stock, and the other against the defendant as a trustee. The object of the action was the same, namely, to collect a debt. The court, although confronted with a provision of the statute permitting the union of causes of action arising out of the same transaction, or transactions connected with the same subject of action, held that the complaint contained two separate and distinct causes of action, which could not properly be united; the one being upon contract and the other being based upon a statute for a penalty or forfeiture. The court said:

"The nature of the two actions are essentially different, although the object to be attained is the same. The facts to establish the liability are entirely unlike. The measure of liability is different; the defenses are different. The rights of the defendant may be seriously prejudiced. Suppose a general verdict is obtained."

In the case of State v. Kruttschnitt, 4 Nev. 179, this court for the first time, rather incidentally perhaps, but emphatically nevertheless, expressed itself on the question of the improper joinder of actions. There the action was brought against the sureties of an assessor, who had become sureties only to the amount of $2,500, and for damages against the assessor for $10,000. Judge BEATTY, speaking for this court, said:

"We know of no principle or practice by which a suit

on a bond against A., B., and C. can be united with an action for damages against A. alone.   The plaintiff will have to elect to prosecute the suit against the principal alone for the whole amount claimed, or against the principal and sureties for the $2,500.   The two actions cannot be united.".

In the case of State of Nevada v. Yellow Jacket Silver Mining Co., 14 Nev. 220, this court, speaking through Mr. Justice LEONARD, quoted approvingly from Mr. Pomeroy's work on Remedies and Remedial Rights, saying:

"It may now, I think, be regarded as the established doctrine that the code in each of the states is the only source of authority from which rules of pleading may be drawn; that its methods have completely supplanted those which preceded it, so that the latter can no longer be appealed to as possessing of themselves any force and authority."

Continuing on the subject, Justice LEONARD said:

"In our opinion, it is wisdom to preserve the plain, simple methods and rules of the code, in pleading and practice; and if section 64 [Rev. Laws, 5039] or any other, does not, in terms, embrace all that is desirable, then let us appeal to the legislature for aid, rather than to judicial legislation."

In that case this court held that taxes due to the state on the proceeds of mines for the different quarters of each year could not be united in the same cause of action, for the reason that every quarterly or yearly tax constituted a separate and independent liability.   It will be noted in this repect that, pursuant to this decision, our later statutes on the subject of taxation and actions for the collection of the same have been amended, so as to overcome the force and effect of the decision in the case of State v. Yellow Jacket, supra.

Illustrative of the manner in which our statutory provision relative to joinder of actions was regarded, we may with propriety refer to the early case of Knickerbocker & Nevada Silver Mining Co. v. Hall, 3 Nev. 194, wherein it was held that in pleadings the distinction

between the several causes of action must be strictly observed. In that case the court was dealing with a pleading involving an action arising out of tort and one growing out of contract. There Justice BEATTY, in a concurring opinion, took occasion to say:

"Because, under our practice, the pleadings are to be liberally construed, with a view to substantial justice between the parties, it does not follow that the substantial rules of pleading can be disregarded and that every hotch-potch of inconsistent facts indorsed 'complaint,' or 'answer,' is to be deemed a sufficient pleading."

The force and effect of statutes such as that found in the amendment to the code of California and in the statutes of New York, permitting the joinder in one complaint of two or more causes of action where they arise out of the same transaction, is expressed concisely in 1 R. C. L. 363. There it is said:

"By virtue of statute in many, if not all, of the so-called code states, there may be a joinder in one complaint of two or more causes of action, where they arise out of the same transaction; the word 'transaction,' as used in such statutes, meaning something which has taken place whereby a cause of action has arisen, and embracing, not only contractual relations, but occurrences in the nature of tort as well."

If this provision were present in our code, and on occasions when the pleadings warranted, we might well, in concert with other courts, follow the doctrine as it is asserted in Ruling Case Law, to wit:

"It is no objection to the joinder of causes of action that they concern separate primary rights, for, however numerous may be minor transactions, each constituting a primary right enforcible by the proper remedy, so long as they all reach back to the point of union as the parent cause thereof they all arise out of one 'transaction' and may be vindicated together, regardless of the form of remedy requisite as to each, provided they affect all the parties and do not require different places of trial."

If our statute contained a provision such as that of California and New York, we might with propriety follow the rule as heretofore asserted; but whether such a rule, even with the elasticity permitted by the peculiar statutory provision referred to, would permit the complaint in this instance to stand against demurrer for misjoinder, is conjectural. The difficulty encountered by the courts on occasions when they were required to deal with the statute permitting joinder of actions where they arise out of the same transaction is found apparent in nearly every jurisdiction where that provision is present. However, inasmuch as such a statute is not before us, we are not required to cross that bridge.

One test that may, we think, be properly applied in cases where the question of misjoinder is to be considered under statutory prescription such as ours, is aptly laid down by Mr. Pomeroy in his work on Code Remedies (3d Ed.), p. 516, where, addressing himself to the subject, the author says:

"If the examination discloses more than one distinct and independent primary right held by the plaintiff, and all of them invaded by the defendant, or more than one distinct and independent wrong done by the defendant to the plaintiff's primary right or rights, then the complaint or petition has united different causes of action, and the rules which control their joinder are brought into operation."

The doctrine thus announced by the learned author is undoubtedly sound. Its application to the question at bar serves to bring the whole matter more in relief, so that the lines of demarcation affecting causes of action here presented stand out more prominently. Hence, as the author says, the rules which control their joinder are brought into operation, and here the rules which control their joinder are furnished by plain, unequivocal language set forth in our code. In determining the question, we must do one of two things: Either apply this rule which the statute makes operative and which regulates the joinder of actions, or we must close our

eyes to it and delegate to ourselves legislative functions. It is true that different causes of action may be united in the same complaint, and in this respect the restrictions imposed on the pleader are those found in the statute; yet where causes of action are united in the complaint, which by reason of these statutory restrictions belong to different classes, as these classes are made by the statute, then the union is prohibited and hence improper. If in a complaint the pleader seeks to join a cause of action which belongs to one of the classes made by the statute with another cause of action not mentioned in the statute, or not belonging to either of the statutory classes, then the statutory inhibition would not apply. In such a case, if the causes of action grew out of a single transaction, their union might be permitted on the theory that such would avoid vexatious litigation. This is especially true when the entire matter might be terminated by a single verdict. There is some authority, which, looking to differentiation in this respect, we deem worthy of note here. We refer especially to Jones v. The Cortes, 17 Cal. 487, 79 Am. Dec. 142; Pfister v. Dascey, 65 Cal. 405, 4 Pac. 393; Rogers v. Duhart, 97 Cal. 504, 32 Pac. 570; Sloane v. Southern Railway Co., 111 Cal. 677, 44 Pac. 320, 32 L. R. A. 193.

The principle on which this differentiation turns is in one way well illustrated by the consideration given to the matter in the opinion of Judge LEONARD in the case of Waters v. Stevenson, 13 Nev. 157, 29 Am. Rep. 293. There the case of Jones v. The Cortes, supra, is referred to, and the views of the Supreme Court of California are approved. There damages was the underlying element in the whole matter. This court, addressing itself to the question, said:

"A cause of action is stated by an allegation of the facts, and the alleged amount of damages is demanded; and whether the pleader intended to allege trespass to the land, or trespass de bonis, or trover, the result is that the plaintiff is entitled to recover just such damages as are allowable from the facts alleged and proved, which make up the whole case."

The object of the action here is twofold: Damages, and recovery of personal property said to be impressed with trust relation. In every cause of action, the wrong asserted is the basic thing. In the first cause of action in this complaint, the wrong charged against the defendants was their failure to protect the interest of the plaintiffs against litigation through which that interest was lost. The wrong in the second and third causes of action is entirely foreign to that of the first and may properly be said to be the act of conversion of personal property by the defendants. The wrong in the fourth cause of action differs from either that of the first or of the second and third, and may be properly expressed as the fraudulent acquisition and wrongful retention or conversion of personal property. In the fifth cause of action the wrong charged against the defendants may be likened to that of the second and third. Here is a union of actions ex contractu in the first with actions ex delicto in the second, third, and fifth. It is true that the facts constituting the several causes of action refer to the contract entered into between plaintiffs and defendants in the first instance, but the basic principle underlying the wrong in the first cause of action is the neglect of the defendants to perform a duty, while in the second, third, and fifth causes of action the wrong is based upon an affirmative injury. These the statute specifically segregates into causes of action independent in themselves and that must not be united. Each subdivision of our code was intended to provide for a class not included in either of the other subdivisions. Hulce v. Thompson, 9 How. Prac. (N. Y.) 113.

Concluding, as we do, that the complaint in this instance set forth causes of action which under our statute could not be united, we may next inquire as to whether or not prohibition under such circumstances is the proper remedy. In this we are not without precedent in the decisions of this court or guidance from those of other jurisdictions. It is claimed here by respondent that, inasmuch as petitioners have the right of appeal, prohibition will not lie. It may, we think,

with propriety be said that the existence of a remedy by appeal is not of itself a bar to prohibition, unless such remedy be plain, speedy, and adequate, in view of the nature of the proceedings and the annoyance or havoc that might be wrought on the party seeking relief.

In the case of State ex rel. Marshall et al. v. District Court, 50 Mont. 289, 146 Pac. 743, Ann. Cas. 1917c, 164, the Supreme Court of Montana, in considering the question, took occasion to remark that:

"A remedy is speedy when, having in mind the subject-matter involved, it can be pursued with expedition and without essential detriment to the party aggrieved; and it is neither speedy nor adequate if its slowness is likely to produce immediate injury or mischief."

In the matter at bar, it appears that petitioners were ordered to answer within a limited period of time. Their failure in this respect would have entailed a judgment by default, with all the attendant consequences. They had the right, looking to the proper interposition of their defenses, to rely upon the specific direction of the statute as to the joinder of causes of action. The error of the district court in overruling the demurrer for misjoinder was one which might have been taken advantage of by permitting judgment to be entered by default against the defendants and thereafter perfecting their appeal to this court. But what kind of a judgment would be entered by default in this case, and what intricacies would follow the entry of such judgment or judgments, and how involved or encumbered would be the property rights of the defendants during all of the time while the appeal to this court was being perfected? When we regard this phase of the matter, it appears to us to be one in which remedy by appeal could not be pursued with that expedition which the nature of the case and the nature of the judgment or decrees that might be entered would demand. Ferguson v. Superior Court, 26 Cal. App. 554, 147 Pac. 603.

In the case of Bell, Davidson et al. v. First Judicial District Court, 28 Nev. 280, 81 Pac. 875, 1 L. R. A.

(N. S.) 843, 113 Am. St. Rep. 854, 6 Ann. Cas. 982, this court, speaking through Mr. Justice NORCROSS, as to the province of the writ of prohibition in cases of this character, said:

" 'The object of the writ is to restrain inferior courts from acting without authority of law in cases where wrong, damage, and injustice are likely to follow from such action.  *  *  *  The writ should not be granted, except in cases of usurpation or abuse of power, and not then, unless the other remedies provided by law are inadequate to afford full relief.'  *  *  *  If the entire proceedings are without authority in law,  *  *  * certainly the remedy to be obtained by the slow process of appeal, which could only follow a vain, fruitless, and perhaps expensive, trial, could not be considered an adequate remedy."

While that case was one involving ouster from office, and might be said to be of a quasi-criminal nature, the rule there applied is no less applicable in cases like the one at bar.

The Supreme Court of Missouri in the case of State ex rel. Minnesota Mutual Life Ins. Co. v. Denton, 229 Mo. 187, 129 S. W. 709, 138 Am. St. Rep. 417, in reply to a suggestion similar to that of respondent here, said:

"Ordinarily an error committed in the rendering of a money judgment may be corrected on appeal, but if the accounting that must be had before the balance can be ascertained is of a character which the court has no power to make, and would involve destruction of rights which could not be restored, an appeal would be of little, if any, avail."

In our judgment, the observation there made properly applies to the matter at bar, in view of the orders which we find to have been made by the district court in this instance.  This doctrine is subscribed to by the Supreme Court of Washington in the case of State ex rel. Wolferman v. Superior Court, 8 Wash. 591, 36 Pac. 443.

In the case of Hayne v. Justice Court, 82 Cal. 284, 23 Pac. 125, 16 Am. St. Rep. 114, the Supreme Court of

California laid down the doctrine that, if an inferior court proceeds to try a cause against an express prohibition of a statute, its excess of jurisdiction may be prevented by prohibition. To the same effect will be found the case of State ex rel. Haskell v. Huston, 21 Okl. 782, 97 Pac. 982.

The Supreme Court of Missouri has had occasion to consider this question in a case where the lower court had sought to exercise an unwarranted authority, thereby causing a verdict and wrongful invasion of property rights. It was there held, in conformity with what we believe to be the general rule, that the writ should properly issue. In principle the case is quite analogous to the matter at bar. St. Louis, K. & S. R. Co. et al. v. Wear, Judge, 135 Mo. 230, 36 S. W. 357, 33 L. R. A. 341. To the same effect is the more recent case of State ex rel. Fenn et al. v. McQuillin, 256 Mo. 693, 167 S. W. 713.

Where the statute makes a specific direction as to the mode by which an action or proceeding may be instituted, or specifically prohibits the bringing of an action or the institution of a proceeding in other than a designated form, the failure or refusal of the trial court to observe these statutory directions or inhibitions may be remedied by appeal, but that such a remedy exists should not preclude a remedy by a more speedy and adequate avenue. The legislature has in no uncertain manner declared as to what causes of action may be united, and has established classes in this respect. This legislative act contitutes a permission and an inhibition—a permission to unite causes of action each of which belongs to the same specified class; an inhibition forbidding the union of causes each of which belongs to a different class. To ignore this statutory provision is to ignore a jurisdictional requisite, and such may properly be the subject of prohibition.

In the case of Bruner v. Superior Court, 92 Cal. 239, 28 Pac. 341, the Supreme Court of California analyzed the underlying principle here involved in much the same

way as that found in the case of Bell et al. v. District
Court, 28 Nev. 280, 81 Pac. 875, 1 L. R. A. (N. S.) 843,
113 Am. St. Rep. 854, 6 Ann. Cas. 982. The doctrine of
the Bruner case was reiterated by the Supreme Court of
California in the case of Anderson v. Superior Court,
122 Cal. 216, 54 Pac. 829. There an application of the
rule which we deem pertinent here is set forth with
that degree of cogency characteristic of the eminent
writer of the opinion. There the question on which the
case turned was the ruling of the superior court in a
bankruptcy proceeding. The alleged insolvents objected
to the amendments of the petition by which amendments
new creditors were brought in. They contended that
the statute did not permit such an amendment; that
the addition of new petitioning creditors constituted a
new and distinct proceeding. These objections were
overruled by the lower court, and an order made requir-
ing the alleged bankrupts to answer. The supreme
court, speaking through Justice BEATTY, made mention
of the statutory conditions upon which a party may be
forced into bankruptcy, and then said:

"Considering the serious consequences to the supposed
insolvent and to those who have dealt with him, the con-
ditions imposed by the statute are not onerous, and
there is no reason why they should be disregarded."

Then the court made the pertinent observation that:

"This particular excess of jurisdiction is one for which
an appeal is a wholly inadequate remedy. The only
effect of an appeal would be to reverse the adjudication
of insolvency, but in the meantime the petitioners would
have incurred cost and damages for the recovery of
which they would have no security."

The principle is pat to the matter at bar, for, inas-
much as there is here a direct violation of a statutory
provision as to joinder of actions, an appeal to this
court would entail a reversal, and in the meantime peti-
tioners would have been subjected to all the inconve-
niences, annoyances, and expense which a judgment, the
appointment of a receiver, or the depositing of enormous

undertaking would entail. The ordinary course by appeal does not furnish that speedy and adequate relief to which petitioners are entitled.

Addressing himself to the subject here at hand, Mr. Spelling, in his work on Injunctions and Other Extraordinary Remedies, page 1491, says:

"Prohibition is as properly granted where the inferior court acts upon a false view of the law fixing its jurisdiction, or a misconstruction of a statute conferring jurisdiction, as where it arbitrarily usurps a jurisdiction in total disregard of law."

Commenting on the rule as laid down in some jurisdictions, the author continues:

"The better doctrine, however, is that the adequacy of the remedy by appeal should remain an open question to be determined, along with the question of jurisdiction in the higher court, upon the hearing of the application."

Adequacy of the remedy by appeal is in our judgment an open question, to be determined in a given case. This doctrine has been adhered to quite consistently by the Supreme Court of California, and we find it followed as well in other jurisdictions. White v. Superior Court, 126 Cal. 245, 58 Pac. 450; Terrill v. Superior Court, 60 Pac. 38; Havemeyer v. Superior Court, 84 Cal. 327, 24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192. The latter case especially supports the position which we take here. There the superior court undertook to appoint a receiver without authority. Orders were issued directing that officer to take hold of the property, close down its works, and sell its stock, machinery, and utensils. The court held emphatically that under such conditions, and where such havoc would be wrought, although a remedy existed by appeal, prohibition, being more adequate and speedy, was the proper relief. To the same effect are the cases of Yearian v. Speirs, 4 Utah, 482, 11 Pac. 618, and Weaver v. Toney, 107 Ky. 419, 54 S. W. 732, 50 L. R. A. 105.

Commenting on the principle announced in these decisions, Mr. Spelling says:

"The doctrine is quite reasonable and in consonance

with general principles governing the employment of extraordinary remedies; for, if it is a general principle that if an ordinary remedy, or such remedy as is available 'in the ordinary course of law,' does not afford a party the specific relief to which he is entitled, or does not meet the emergencies of his case, it is no bar to injunction, mandamus, or other remedies of an extraordinary character, why then should such fruitless resort stand in the way of prohibition?" Spelling, Injunctions and Other Extraordinary Remedies, p. 1489.

The statute, in declaring that only certain causes of action may be united in a complaint, grants to every party defendant a right to so shape his defense as to meet only those causes which by statute may be joined in one action against him. This right, like others provided by the statute, is a something to be relied upon, and not a mere direction to be followed in consonance with the whim of the trial court.

The question of whether a remedy is speedy and adequate should be determined in the light of its prompt effectiveness, looking toward the particular error from the effect of which the aggrieved party seeks to be relieved; this, too, in contemplation of the havoc, expense, jeopardy, and confusion entailed to all parties. State ex rel. Martin v. Superior Court of Grant County, 97 Wash. 358, 166 Pac. 630, L. R. A. 1917F, 905. In the last-cited case the Supreme Court of Washington had before it the propriety of a writ of prohibition, where the lower court had denied a change of venue; the same having been demanded under statutory provision. There, as here, it was contended that the same could be properly reviewed on appeal. The court, in passing on the question, said:

"Where there is a right to a trial in a particular place, which right is independent of the issue as tendered by the complaint, an adequate remedy means a trial in the first instance by a court having jurisdiction to hear and determine the merits."

Addressing itself to the question of adequacy of the remedy by appeal, the court continued by saying:

"Before we could even consider the merits of the case, we would have to decide the question of venue, or the question of jurisdiction, and do that which ought to have been done in the first place."

So here, if the adequate remedy means that the complaint shall not present actions the joinder of which is prohibited by the statute, before this court could consider the merits of the case on appeal, it would be compelled to first decide the question of the propriety of the pleading upon which the case was predicated. The question of the proper joinder of actions and proper joinder of parties would confront us in the very first instance; and deciding this, as we must, as being such as is not permitted by the statute, a reversal of the case would follow, with instructions to sustain the demurrer on one or both of such grounds; hence to do that which should have been done in the first instance with the intervening delay and inadequacy entailing confusion and expense. So we say, as did the court in the case of State ex rel. Martin v. Superior Court, supra:

"If we would have to so hold on appeal, why should we not say so now?"

It is not alone in matters where absolute lack of jurisdiction is present that the writ will lie to stay the action of an inferior tribunal, but with equal force will its functions operate where, although the subject-matter is properly within the jurisdiction of the inferior tribunal, the latter exceeds its legitimate powers. High on Extraordinary Legal Remedies (3d Ed.), p. 734; Long v. Superior Court, 102 Cal. 449, 36 Pac. 807; Quimbo Appo v. People, 20 N. Y. 531.

The writ should issue, for the reason that there is a misjoinder of causes of action, and also for the reason that there is a misjoinder of parties defendant.

COLEMAN, J., concurring:

I concur in the order, and generally in the conclusions reached by Mr. Justice SANDERS as to the law. To my mind, all of the causes of action alleged against the defendant Walser grew out of the contract entered into

between the plaintiffs and himself, and hence were properly joined.

It is conceded, as I understand, that, if section 97 of our civil practice act provided for the joinder of causes of action growing out of the same transaction, the various causes of action pleaded against defendant Walser would be properly joined, but contended that, since that section does not provide for the joinder of causes of action growing out of the same transaction, but provides for the joinder of causes of action growing out of contract, that the causes of action pleaded against defendant Walser are improperly joined. I cannot see the force of the contention. The word "transaction" is simply a more comprehensive term than the word "contract"; but the right of joinder in either case is simply statutory. To my mind, the spirit which should control in determining whether two or more causes of action may be joined when they grow out of a transaction should control in determining whether two or more causes of action growing out of a contract may be joined; and in either case the words of Winslow, C. J., in McArthur v. Moffatt et al., 143 Wis. 564, 128 N. W. 445, 33 L. R. A. (N. S.) 264, are inspiring. He says:

"The cold, not to say inhuman, treatment which the infant code received from the New York judges is a matter of history. They had been bred under the common-law rules of pleading, and taught to regard that system as the perfection of logic, and they viewed with suspicion a system which was heralded as so simple that every man would be able to draw his own pleadings. They proceeded by construction to import into the code rules and distinctions from the common-law system to such an extent that in a few years they had practically so changed it that it could hardly be recognized by its creators. Although the code by its terms abolished all existing forms of pleading, and prescribed one general form of pleading, which should be used in all actions, the courts early decided that the distinctive features of pleadings at law and in equity still remained, and so they easily held that what was formerly called a cause

of action at law could not be joined with what was formerly called a cause of action in equity. To meet and counteract this narrow and illiberal construction of the law, the amendments of 1852 (Laws 1852, c. 392) were adopted, providing expressly that legal and equitable causes of action might be joined, provided they both belonged to one of the seven classes, and further creating a new class of joinable actions, to wit, those which arise out of the 'same * * * transactions connected with the same subject of action.' It is very clear that the legislative intent in making these amendments was to permit and encourage the joinder of causes of action which could reasonably be said to involve kindred rights and wrongs, and thus settle such kindred rights and wrongs in one proceeding, rather than to require them to be settled by piecemeal in different actions with much greater expenditure of time and money."

The language of BEATTY, C. J., in State v. Yellow Jacket S. M. Co., 14 Nev. 253, is also instructive. He says:

"The practice act is a remedial law. It was designed to simplify legal proceedings; to expedite them and render them less costly and burdensome to litigants. Many of its rules are borrowed from the practice in equity, and, in construing its provisions, courts have generally professed to be guided by the liberal and enlightened principles of equity, with a view to the promotion of justice, the discouragement of oppression, and the prevention of needless expense and delay. For all these reasons, I not only feel authorized, I feel constrained, to give the largest and most liberal possible construction to the provision in question. For it cannot be denied that the rule of equity and of sound policy is against the unnecessary multiplication of suits. When a number of demands of similar nature, involving similar principles and results, capable of being heard together without inconvenience, and open to the same defense, can all be embraced in the same judgment, they ought to be united in the same action, not only for

the sake of the litigants, but also for the sake of the public. This is the doctrine of equity (Story's Eq. Pl., secs. 530–532), and this is the spirit of section 64 of the practice act, as is shown by the restrictive clause near the end, which prohibits the joinder of actions, unless they 'all belong to only one of these classes and shall affect all the parties to the action, and not require different places of trial.' This express limitation upon the right of uniting separate causes of action in the same suit proves that it was the intention of the framers of the law that, subject to its own positive restrictions, it should be largely and liberally construed. 'Exceptio probat regulam.' "

That the various causes of action pleaded against defendant Walser grew out of contract is to my mind clear. A cause of action, briefly stated, is nothing more nor less than the violation or threatened violation of a legal right. The rights of the plaintiffs on the one hand and of Walser on the other were fixed by the contract. The various causes of action pleaded against Walser will necessitate the use, to a large extent, of the same evidence, and none of them can be maintained except by proof of the contract pleaded, as the very foundation of their respective rights. Hence I see no escaping the conclusion that such causes of action grew out of the contract, or the force of the reasoning which induced the legislature to provide for the joining of causes of action which grow out of a contract.

Plaintiffs take an inconsistent attitude relative to the contract under which it is claimed defendant Margrave acquired his interest. First, they assert that, because of the fraud practiced in inducing the execution of that contract, it should be declared null and void, and that they should be permitted to recover the interest held by Margrave. Assuming that this contention is sound, then their rights in that regard cannot be said to arise out of contract, and hence that cause of action is improperly joined with those growing out of the contract. On the other hand, if this contention be waived, or if it be found that this contract was not induced by

fraud, this cause of action is not joinable with the cause of action alleged against Walser, for the reason that it does not affect both of the defendants, as the plaintiffs are seeking, not the one-third interest which Walser acquired, or anything because thereof, but only the one-third interest which Margrave acquired.

## ON REHEARING

By the Court, SANDERS, J.:

A change has been made in the personnel of this court since the order for rehearing. As the order is not directed to a review of any particular point or points covered by the opinion, we shall consider the cause as being before us for reexamination and decision as though it had never been considered and decided. For the purposes of this opinion we refer to the abstract of the pleading in question made by MCCARRAN, C. J.; and in view of the already full and exhaustive discussion of the facts we deem further comment thereon unnecessary.

Upon further examination and consideration of the pleading (the proper construction of which is made the basis of this proceeding), we are constrained and impelled to recede from the position taken in the former opinion—that a distinct and unconnected cause of action is alleged against the defendant Margrave—and now hold that the supposed several causes of action are not improperly joined. Hence the demurrer to the petition for prohibition must be sustained. This disposes of the proceeding, but as the construction to be given the complaint has been reargued with such force and earnestness by counsel whose names appear upon the records of this court as able jurists, who have had occasion to decide many questions of procedure equally as important as that here presented, we shall examine more fully their respective positions.

If we clearly interpret that taken by counsel for petitioners, it is their contention that the plaintiffs by their own showing have improperly joined a cause of action on contract with causes of action against trustees, not eo nomine but quasi-trustees—persons who

reap benefits from a breach of trust and so become answerable as trustees.   Lewin, Trusts, 4th ed., 562–638.

Counsel for respondent insists that, if the complaint states a cause for equitable relief, having jurisdiction of the parties and the subject-matter, the court is in duty bound to uphold the pleading.

1, 2.  A fair criticism of the pleading from the point of view of the respondent is that the pleader, by whom this complaint was drawn, lost sight of the radical changes in pleading introduced by the code system. However strong grievances or wrongs may appeal to the conscience of a chancellor for correction and relief, we are of the opinion that the averments and allegations of such grievances or wrongs, however varied they may be, when stated in the form of a complaint, it is sufficient only when it squares with the rules of the civil practice act (Rev. Laws, 4943, et seq.), and not otherwise.  State v. Y. J. S. M. Co., 14 Nev. 238.  The pleader has confused the issue by intermingling a variety of pretenses and charges in the charging part of the complaint in the usual form of a bill in equity.  Such form of pleading prevailed extensively under the old chancery practice.  We need scarcely say that nothing of this kind is allowable under the code.  The plaintiff is now required to state the facts which constitute his cause of action, and nothing more, and the court will give to him such relief as he is entitled to under the rules of law.

3.  The formal bill in chancery, as for an accounting, a discovery, and the like, is no longer used, but the remedies are preserved.  Conceding the complaint to be a good specimen of a bill in equity, nevertheless, if the complaint states but one cause of action, whatever else it may contain, the defendants cannot successfully demur on the ground that several causes of action have been improperly united.  State v. Y. J. S. M. Co., supra.

4.  A cause of action is defined, and the test of whether a right of action is single or distinct is prescribed, in State v. Y. J. S. M. Co., supra.  The application of these rules bring us to the consideration of the petitioners' contention—that the pleader has improperly joined a

cause of action for the breach of a contract with separate and distinct causes of action against defendants as trustees—and in support of their position they confidently rely upon the rules of pleading applied in the case of Alger v. Scoville, 6 How. Prac. (N. Y.) 131, where a demurrer, similar to that here interposed, was sustained. The case of Alger v. Scoville is conspicuous for several reasons: First, because it was the first decision of the Supreme Court of New York after the adoption of the code system (1848) that involved the construction to be given section 167 of the code of civil procedure, which then read the same as section 97 of our practice act (Rev. Laws, 5039), when this action was commenced in the lower court; second, because the court declined to adopt the construction given the section by Mr. Field, counsel in the case, who is recognized as one of the learned authors of the code system of pleading; third, because the conclusion reached by the court, it has been supposed, brought about the amendment that added to the section another subdivision which permits causes of action, whether legal or equitable, or both, to be united where they all arise out of "the same transaction or transactions connected with the same subject of action." Moak's Van Sant, Pl. (3d Ed.) 135. It has been argued that had section 97 of our practice act contained this subdivision when this suit was filed, the demurrer to the complaint might have been properly overruled. We are of the opinion that the amendment has no bearing upon the supposed several causes of action stated in this complaint. An analysis of the demurrer shows that it amounts to a misjoinder of parties; that is to say, that the defendants by one cause of action are sued as individuals to recover a personal judgment for the sum of $30,000 as damages for the breach of a written contract; and by the second and subsequent causes of action they are sued in the capacity of trustees by operation of law. This is a strained construction for the purpose of establishing a misjoinder of action. If the defendants are liable as trustees, it is by reason of their contract with

plaintiffs. The objection goes to the remedy, and not to the cause of action. The facts are entirely different from those stated in the complaint in Alger v. Scoville. In the latter case several persons were joined as defendants, against one of whom was stated a cause of action upon a simple contract for the payment of money, and against another defendant as assignee, and distinct causes of action were stated against other defendants, in some of which some of the defendants had no interest. No such causes of action are pretended to be stated in the complaint under discussion.

The one subject-matter of this suit is trust property arising from an agreement entered into between the plaintiffs and the defendant Walser, in the execution of which the defendants became joint actors and beneficiaries—in what proportion is immaterial. The complaint recites but one connected history of the property affected by the agreement; it begins with its origin, as stated in the agreement, and comes down in one unbroken line through a series of acts on the part of the defendants which contributed to and culminated in the alleged injuries to plaintiffs. The defendants are shown to have a connected and common interest in the one subject-matter of the action centering in the point in issue in the cause. Though the relief demanded is distinct, it is still but one subject-matter of action. If the allegations of the complaint are true, and as such they are to be taken on this demurrer, the defendants are charged with an inexcusable disregard of the plain performance of a duty voluntarily assumed by their contract. They may be liable as trustees, but we are not concerned with the remedy. They became trustees by reason of the contract, and it is not necessary for us to clothe and to unfrock them of a trust in order to establish a misjoinder of action. They are as much liable in damages for the loss of property by negligent acts in disregard of their contractual duty as they are to answer for property found in their hands, and placed beyond the reach of plaintiffs in violation of their agreement.

5. It is also argued that the first cause of action is for the breach of a duty imposed by contract and improperly joined with the second and subsequent causes of action for a tort or torts. It is elementary that where the law imposes a duty that arises from the relation rather than the contract, and where the parties have entered into these relations and the duty is disregarded, the one who suffers may sue upon the agreement, or may treat the wrong as a tort and bring an action analagous to that of trespass on the case. But if there be no legal duty except as arising from the contract, there can be no election—there is no tort, and the party must rely upon the agreement alone. Bliss, sec. 14. It is clear, in any view of the complaint, the action is not maintainable without referring to the contract and laying a previous ground for it by showing a contract.

6. The averment of negligence in the first cause of action and fraudulent dealings in the second and subsequent causes of action may, we think, fairly be construed as amounting to substantial allegations of the breach of the agreement upon which the action is founded, and it is not necessary to hold that plaintiffs charge the defendants with a tort or torts, independent of the breach of the agreement, so as to establish a misjoinder of action. As above stated, this contention cannot be sustained, as no legal duty is shown to exist on the part of defendants, except as arising from the contract.

7. Considering the demurrer in connection with the several prayers for judgment, the real ground of demurrer is founded upon the several grounds for relief. The latter may be wholly omitted in the complaint, yet the plaintiffs would be entitled to such relief as they could establish upon proper proof of alleged facts. The prayer for judgment is not demurrable. Garner v. Harmony Mills, 6 Abb. N. C. (N. Y.) 218.

Margrave is a proper party. Brinkerhoff v. Brown, 6 Johns. Ch. 139; Fellows v. Fellows, 4 Cow. 682; Boyd v. Hoyt, 5 Paige, 65. True, these cases were decided before the code of civil procedure, but the ground upon which

the decisions are put is that in such cases there is but one cause of action averred. The cases decided in New York since the code are cited in Wood v. S. S. B. & F. Co., 37 N. Y. Supp. 885.

Entertaining these views, the demurrer to the petition for a writ of prohibition must be sustained, the alternative writ discharged, and the proceeding dismissed.

COLEMAN, C. J., concurring:

I concur in the conclusion reached in the majority opinion, that the complaint sets forth only one cause of action, and in the order.

The facts were pretty fully stated in the opinion of MCCARRAN, C. J., when the case was before us upon the first hearing. The complaint, briefly stated, alleges a trust relationship between the Pages and Walser, and that Margrave took his interest knowing the facts of the trusteeship between the Pages and Walser, and without consideration. The relief sought is and can be nothing more nor less than an accounting by the defendants. It is true that the so-called first cause of action concludes with a prayer for damages, but the legal effect of a complaint must be determined by its allegations, and not by its prayer. 31 Cyc. 111.

Whether the trust is one arising from contract or by operation of law, matters not. The relationship exists just the same, and it is the duty of the defendants in the action to give an account of their stewardship. 2 Pomeroy, Eq. Jur. (2d Ed.) sec. 1063. And this duty is very comprehensive; it extends through the entire range of operation by the trustees. They may be liable for neglect by being held answerable for property actually lost through want of care or prudence, and also for stock, securities, or other assets which they might have received if they had exercised due care and prudence in their dealings with the trust property. It is also a well-known rule that where a person takes property charged with a trust, knowing it to be so charged, as did Margrave, he is liable as trustee; and when he takes an interest, as did Margrave, he becomes a cotrustee, and

is liable. These rules are fundamental, and need no citation of authorities to support them. Sustaining the general rules enunciated, attention is called to sections 1066 to 1081, inclusive, of 2 Pomeroy's Equity Jurisprudence (2d Ed.). In view of the contention of counsel for petitioners, I feel constrained to quote at length from section 1080 of the work just mentioned, as follows:

"It has already been shown that a beneficiary may always claim and reach the trust property through all its changes of form while in the hands of the trustee, and that he may also follow it into the possession and apparent ownership of third persons, until it has been transferred to a bona-fide purchaser for valuable consideration and without notice; and that a court of equity will furnish him with all the incidental remedies necessary to enforce his claim and to render it effective. In addition to this claim of the beneficiary upon the trust estate as long as it exists, the trustee incurs a personal liability for a breach of trust by way of compensation or indemnification, which the beneficiary may enforce at his election, and which becomes his only remedy whenever the trust property has been lost or put beyond his reach by the trustee's wrongful act. The trustee's personal liability to make compensation for the loss occasioned by a breach of trust is a simple contract equitable debt. It may be enforced by a suit in equity against the trustee himself, or against his estate after his death, and the statute of limitations will not be admitted as a defense unless the statutory language is express and mandatory upon the court. The amount of liability is always sufficient for the complete indemnification and compensation of the beneficiary."

Perry on Trusts and Trustees (6th Ed.), sec. 843, lays down the general rule that an action at law will not lie against a trustee while the trust is still open; and in the concluding paragraph of White v. Sheldon, 4 Nev. 280, this court, speaking through LEWIS, J., said:

"But it is argued an action for money had and

received might have been maintained by the plaintiff at the time the defendant sold the stock, and that in such case a period of two years ought to bar his right. We do not think that such action could be maintained. Had Sheldon acknowledged in any way that any sum was due the plaintiff, perhaps such an action might be maintained; but where, as in this case, it was necessary for the plaintiff to establish facts out of which a trust was created, and then to show that the trust property was converted into money, it is very certain that such facts could not be established in an action brought simply to recover money. The plaintiff could not show himself entitled to any relief whatever until an implied trust was established, which certainly could not be done in a court of law and in an action of assumpsit; such trust can only be established in an equity proceeding. So, too, this is the only character of action in which the plaintiff could obtain full and adequate relief."

If Margrave did not know of the interest of the Pages in the securities deposited by them with Walser, but took his interest without parting with a valuable consideration therefor, the trust may be enforced against him. 39 Cyc. 526.