## WILLIAM D. TORREYSON *v.* THE BOARD OF EXAMINERS OF THE STATE OF NEVADA.

CLAIMS FOR OUTSTANDING STATE CAPITOL INDEBTEDNESS. Where a claim was duly presented under the Act of 1871, providing for payment of outstanding indebtedness incurred in constructing the state capitol, (Stats. 1871, 154): *Held*, that the State Examiners could not be required to examine or pass upon such claim until the completion and acceptance of the capitol.

CONSTRUCTION OF STATUTES RELATING TO INDEBTEDNESS FOR STATE CAPITOL. The Act of 1871 relating to outstanding indebtedness for construction of the state capitol, (Stats. 1871, 154) must be read in connection with the Act of 1869, providing for its erection, (Stats. 1869, 73); and taking the two together, as no claim could be allowed or warrant drawn upon the $100,000 fund until completion and acceptance of the capitol, so also no indebtedness could be incurred.

STATUTORY CONSTRUCTION—TITLE OF ACT. The title of a statute may be considered for the purposes of construction, and especially so when the title is referred to in the body of the act.

ALL PARTS OF STATUTES TO BE GIVEN EFFECT IF POSSIBLE. No part of a statute should be rendered nugatory, nor any language be turned to mere surplusage, if such consequences can properly be avoided.

APPLICATION to the Supreme Court for a writ of mandamus to compel the State Board of Examiners to take action upon a claim presented by relator Torreyson. The affidavit set forth that relator's claim was a bona fide one of $901.34 against Peter Cav-

anaugh, for labor and material performed and used in the construction of the state capitol; that the appropriation of $100,000 made by the Act of February 23d, 1869, for the erection of the capitol had been fully exhausted; that relator had presented the claim to the board in accordance with the provisions of the Act of March 6th, 1871, referred to in the opinion; that the board refused to act upon it for the reason that the capitol building was not completed and had not been accepted; and praying for a writ commanding the board to take action.

The board in its response set forth that the appropriation of $100,000 had not been allowed by it; that until such allowance no jurisdiction vested in it to hear and determine the alleged claim of relator; that it had not satisfied itself that all the moneys paid from the state treasury to Peter Cavanaugh, or others for him, for the construction of the capitol, had been actually used in such construction, and that such determination by it was a condition precedent to its action upon claims presented under the Act of 1871.

*A. C. Ellis* and *R. M. Clarke*, for Relator.

*L. A. Buckner*, Attorney General, for Defendants.

By the Court, Whitman J.:

At the session of 1869, the legislature of the State of Nevada passed an act entitled "An Act to provide for the erection of a state capitol at Carson City." In this Act are Sections 3 and 10, as follows:

"Section 3. The entire cost of said building when completed, (excluding the material furnished, as provided in Section 2 of this act) shall not exceed one hundred thousand dollars."

"Section 10. In letting contracts said Board shall not obligate the state to pay, nor shall the Board of State Examiners allow, to any contractor, at any time prior to the completion of his contract and its acceptance by said Board, more than seventy-five per cent. of the value of materials then furnished, or work then done; and upon completion and acceptance said Board of Commissioners may agree to pay, and said Board of Examiners may allow, the balance due on said contract."

At the session of 1871, an act was passed, entitled " An Act to provide for the payment of outstanding and unsatisfied claims for labor performed, money or material furnished, services rendered, and necessary expenses incurred in and about the construction and completion of the state capitol at Carson City," in which are Sections 2, 3 and 4, as follows :

" Section 2. Any person having an unsatisfied *bona fide* claim against Peter Cavanaugh for labor actually performed, money or material actually furnished, services rendered, or expenses necessarily incurred for and actually used in the construction or completion of the state capitol at Carson, which claim has not been paid or secured, either in whole or in part, by warrants or orders for warrants, upon the treasury, shall present the same to the State Board of Examiners, within thirty days after the passage of this act, itemized and duly verified, for their action as provided by law.      *      *      *      *      *      *      *

" Section 3. If, upon examination, the Board of Examiners are satisfied that the labor was actually performed or the material actually furnished, or the expenses necessarily incurred in the construction of said state capitol, and that all the money heretofore paid from the state treasury to said Cavanaugh, or others, for the construction of said state capitol, has been actually used for that purpose, and that no part of the claim has been paid, or secured to be paid, they shall allow the same, or so much thereof as they shall deem proper and just ; and certify the claim with their approval to the controller of state, who shall thereupon draw his warrant upon the state treasurer for the amount so allowed, in favor of the party owning or holding such claim."

" Section 4. No claim shall be allowed by the Board of Examiners against the fund created by this act, nor shall the Controller draw any warrant against the same, until the appropriation of one hundred thousand dollars, created by Act of February 23d, 1869, entitled ' An Act to provide for the erection of a state capitol at Carson City,' shall have been fully exhausted by indebtedness incurred, claims allowed, or warrants drawn against the same."

The applicant brings himself under the requirements of Section 2, just quoted ; and complains that the defendants refuse to ex-

amine or pass upon his claim, for the reason that the capitol is not completed; and therefore they cannot legally act. The fact of non-completion is admitted. Does the conclusion attained by the Board of Examiners logically follow?

The two acts are to be construed together, and therefrom the intention of the legislature is to be sought. Turning first to the literal language, it would seem that the conclusion is correct. No claim can be examined or allowed under the Act of 1871, until the sum of one hundred thousand dollars is fully exhausted, "by indebtedness incurred, claims allowed, or warrants drawn against the same."

It is admitted, that no claim could be allowed or warrant drawn against the fund named, until the completion and acceptance of the capitol; but it is urged that indebtedness may, and necessarily must, be incurred against the same; and that when the sum of seventy-five thousand dollars has been allowed or drawn, as is the case, it is conclusively shown that an indebtedness to the whole amount of one hundred thousand dollars has been incurred. If the language of the two acts does not clearly express the intention of the legislature adversely to this proposition, of which there would seem to be no doubt, the application of some other rules of construction to the Act of 1871 makes the matter certain.

The title of a statute may be considered for purpose of construction. *Ex industria*, this act, Section 1, declares: "For the purposes recited in the title of this act, there shall be levied," &c. These purposes, so recited, are to pay for the "construction and completion of the state capitol."

Again, no part of a statute should be rendered nugatory, nor any language turned to mere surplusage, if such consequences can properly be avoided. The admission, or without that, the natural consequence of the construction claimed by applicant, produces such result, as to the words "claim allowed or warrant drawn," of Section 4; as no such action can be had until completion and acceptance of the capitol. Here, then, in that section, are three disjunctive propositions; the incurrence of an indebtedness, the allowance of claims, the drawing of warrants, referring equally to one common subject, of which two must fall, and the other stand, if

the applicant be correct.   The more natural conclusion is that all must stand; and that, as no claim could be allowed, or warrant drawn, upon the one hundred thousand dollar fund until completion and acceptance of the capitol, so also no indebtedness could be incurred.   Such is evidently the meaning and intention of the statutes cited; and that being the case, the Board of Examiners properly refused to consider the claim of applicant, and the writ must be denied.

It is so ordered.