SEABORN, Superintendent of Banks, *v.* FIRST
JUDICIAL DISTRICT COURT Et Al.

Nos. 3054–3060

February 9, 1934.                    29 P. (2d) 500.

*Harwood & Diskin,* for Petitioner:

*H. R. Cooke,* for Respondents:

*Prince A. Hawkins,* for Respondents:

*W. M. Kearney, John Davidson* and *Ernest S. Brown,* for Respondents:

*E. F. Lunsford,* for Respondents:

# OPINION

By the Court, CARVILLE, District Judge:

The petitioner asks for a writ of prohibition to restrain the First judicial district court of the State of Nevada, in and for the county of Ormsby, from appointing receivers for certain banks, and the taking possession by said court through its receivers of the assets now in the possession of petitioner as superintendent of banks, and formerly belonging to each of said banks.

There are seven banks involved in this proceeding, and, as they are all situated in a similar position and the same question is involved as to each of them,

counsel representing the petitioner and the respondents stipulated that this court consider all of the petitions under one head and render its opinion disposing of the questions involved by one decision. The file numbers given the respective petitions in this court are 3054 to 3060, inclusive, and affect the following banks: Riverside Bank, 3054; Carson Valley Bank, 3055; Virginia City Bank, 3056; Bank of Nevada Savings & Trust Company, 3057; United Nevada Bank, 3058; Tonopah Banking Corporation, 3059; Bank of Sparks, 3060.

Upon the filing of the petitions, an alternative writ of prohibition was issued in each case, and the returns thereon consisted of answers, demurrers, and motions to quash the alternative writs of prohibition, and to dismiss the petitions for the writs of prohibition, all raising the questions whether the facts alleged in the petitions are such as to entitle petitioners to the writs petitioned for, and whether the facts alleged show any excess of jurisdiction in the lower court for which petitioner has no adequate remedy.

For the purpose of convenience and brevity we will refer to the act of 1933, chapter 190, page 202, of the Nevada session laws, as the banking act.

A situation unprecedented in the State of Nevada prevails by reason of so many of the banks of the state being involved. About seventeen thousand depositors are affected, and said banks have been closed for a period of over a year. The economical welfare of the state, from the banking and business standpoint, has been badly shattered, and the situation is such that we appreciate the extraordinary nature of the effect upon the people of Nevada and business conditions generally throughout the state. To a great extent the usual and ordinary vocations of the people involved are stock raising, ranching, mining, and commercial business. Unusual conditions have prevailed during the past few years in the way of declining prices and general chaos which have made it impossible for

the business men to meet their financial obligations, which, in turn, has created an unusual strain on said banks. With said banks closed, there has been little or no opportunity for business men to obtain money or credit with which to carry on. We can therefore assume that the situation confronting the lower court dealt with no ordinary state of affairs, and that these conditions were taken into account by said court.

1. It was argued most strenuously before this court that a writ of prohibition is not the proper procedure to determine the matters involved, and that there is an adequate remedy in the ordinary course by appeal. We will first consider that question.

Section 9255, N. C. L. 1929, defines a writ of prohibition as follows: "The writ of prohibition is the counterpart of the writ of mandate. It arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."

Section 9256, N. C. L. 1929, provides where and when a writ of prohibition shall issue in the following language: "It may be issued only by the supreme court, to an inferior tribunal, or to a corporation, board, or person, in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. It is issued upon affidavit, on the application of the person beneficially interested."

In the case of Walser v. Moran, 42 Nev. 118, this court said (page 120, 173 P. 1149, 1150, 180 P. 492): "Properly speaking, the office of the writ of prohibition is not to correct errors, but to prevent courts from transcending the limitation of their jurisdiction in the exercise of judicial power."

Again, at pages 120 and 121 of 42 Nev., 173 P. 1149, 1150, 180 P. 492: "We do not apprehend that the rule stated extends to the correction of errors for a mere irregularity in the exercise of an authority inherent in

a court; but, where an authority otherwise inherent is limited by statute, the court which acts differently from the prescription of the act exceeds its jurisdiction, and is therefore liable to prohibition."

If the appointment of a receiver or receivers by the lower court would be void by reason of the alleged exclusive nature of the banking act under which the action is instituted, we think it would be a case for the proper interference by this court upon a writ of prohibition, unless there is another plain, speedy, and adequate remedy at law. Walcott v. Wells, 21 Nev. 47, 24 P. 367, 9 L. R. A. 59, 37 Am. St. Rep. 478; Bell v. District Court, 28 Nev. 280, 81 P. 875, 1 L. R. A. (N. S.) 843, 113 Am. St. Rep. 854, 6 Ann. Cas. 982.

An early decision of the question involved is of extreme importance, since it affects the economical welfare of the state. Many of the people of the state are so vitally concerned that we feel this court is warranted in considering the application for the writ upon its merits in the sound judicial discretion of the court for the furtherance of justice, and to allow a speedy adjustment of the banking situation within the state, without the necessity of a long drawn out and expensive process of appeal. Golden v. District Court, 31 Nev. 250, 101 P. 1021; McComb v. Fourth Judicial District Court, 36 Nev. 417, 136 P. 563; State v. Churchill County, 43 Nev. 290, 185 P. 459; State ex rel. Hatch v. Court, 50 Nev. 282, 257 P. 831; Metcalfe v. District Court, 51 Nev. 253, 274 P. 5.

This brings us to a consideration of the main question. Has the lower court jurisdiction to appoint a receiver or receivers to take from the possession of petitioner, as superintendent of the banks, the assets of the closed banks and wind up their affairs?

Petitioner maintains that the banking act, supra, places the liquidation of the closed banks in his possession, and the lower court has no jurisdiction to interfere except in so far as the act itself prescribes; in other words, that the banking act confers exclusive

power in the superintendent of banks, to liquidate the assets of said banks, unless the court should adopt the means provided in sections 70 to 76, inclusive, of said banking act.

Petitioner bases his petition upon the following grounds: (1) That there is no authority in law for the filing of the cross - complaints by the respective parties, nor any authority to determine the matters alleged in the cross-complaints, or to afford the relief prayed for therein; (2) that the complainants are simple creditors and not qualified nor entitled to sue for or demand the appointment of a receiver in the action, because no action of a creditor lies solely for that purpose on any ground stated, or for any of the causes set forth in the cross-complaints; (3) that the original complaint filed in the action was filed in a special statutory proceeding, authorized by the banking act, which act contains no authority for filing a cross-complaint, and no authority is contained therein for a court to hear and determine the matters raised by such cross-complaint, or to afford the relief prayed for therein; that no authority or jurisdiction is granted under said act to the court to appoint a receiver or to grant any relief except the relief specifically authorized by the statute; (4) that the cross - complaints fail to state facts sufficient to constitute a cause of action.

We will first consider the proposition of whether the banking act places the liquidation of closed banks exclusively in the superintendent of banks and deprives a court of competent jurisdiction of the right to interfere by the appointment of a receiver.

An examination of the said banking act discloses that it provides a means of incorporating banks; authorizes them to conduct certain kinds of business; regulates the control of such business; provides for the appointment of a superintendent of banks; prescribes the powers and duties of the state board of finance; incorporates the provisions of the general corporation law of 1925 and civil practice act of the state; provides for reorganization, incorporation of assets, and the liquidating

of banks in certain cases; makes the violation of certain provisions a criminal offense; and repeals certain acts and all acts or parts of acts in conflict with it.

In this proceeding it is admitted that the banks in question are insolvent. Two means are provided in the banking act for the taking over of insolvent banks by the superintendent of banks. The first provides generally that, when a bank becomes insolvent, it may place its affairs in the hands of the superintendent of banks by posting a notice on its front door, as provided in section 23 of said act. The posting of the notice is sufficient to place all assets and property of the bank in the possession of the superintendent of banks.

"And the said bank shall be liquidated and its property and assets administered as in this act or otherwise by law provided."

The second method provides generally that the superintendent of banks is given the right to take possession of a bank under the conditions specified in section 53 of said act.

"Upon taking possession, as aforesaid, the superintendent of banks shall retain such possession until such bank shall be placed in condition safely to resume business or its affairs be finally liquidated as herein provided, or until otherwise ordered by a court of competent jurisdiction."

It will be noted that under both sections, which provide the conditions under which the superintendent of banks might take possession of a bank, it is specified in section 23 thereof that a bank shall be liquidated "as in this act or otherwise by law provided." And in section 53 thereof such bank shall be liquidated as provided in the banking act "or until otherwise ordered by a court of competent jurisdiction."

Section 68 of said act provides generally that, when an action is commenced by depositors or creditors representing not less than 15 percent of the outstanding indebtedness against an insolvent bank, such action shall be governed by the civil practice act, approved March 17, 1911, and acts supplemental and amendatory thereto.

Section 77 of the banking act makes the 1925 general corporation law, not in conflict, a part of said act.

In the case of State v. Wildes, 34 Nev. 94, at page 126, 116 P. 595, 600, this court stated: " * * * The Constitution determines that there shall be three separate, co-ordinate branches of government, the legislative, executive, and judicial, and that neither branch shall perform functions that essentially belong to one of the other branches. The appointment of receivers and the winding up of insolvent corporations are judicial in nature, and are functions of the judicial branch of government, and not of the executive or legislative, further than the latter may prescribe procedure."

While this case indicates that a legislature might in the exercise of police powers divert the authority of liquidating insolvent corporations from the judicial to the executive branch of our government, the point has never been directly decided in this state. We do not deem it necessary to decide that point in this proceeding, according to the view we take of this matter.

2, 3. In all cases where, by legislative enactment, a mode of procedure is prescribed for the accomplishment of a particular purpose, and the question is raised as to whether or not such mode of procedure is exclusive, it is important to determine from the act the legislative intent. This court has passed upon the construction of laws in the light of legislative intent on many occasions.

In the case of State v. Washoe County, 6 Nev. 104, it is held that, where the language of a statute is plain, its intention must be deduced from such language, and courts have no right to go beyond it.

The case of Torreyson v. Board of Examiners, 7 Nev. 19, holds that no part of a statute should be rendered nugatory, nor any language be termed mere surplusage, if such consequence can properly be avoided.

Corbett v. Bradley, 7 Nev. 106, holds that no specific requirement of a statute should be dispensed with or held merely directory, unless it is clearly manifest that the legislature did not deem a compliance with

it material, or unless it appears to have been prescribed simply as a matter of form.

In the case of State v. Ruhe, 24 Nev. 251, 52 P. 274, this court has held that the object of the interpretation of a statute is to ascertain and enforce the intention of the legislature. No sentence, clause, or word should be construed as unmeaning and surplusage if a construction can be found legitimately which will give force and preserve all of the words of the statute. It is a canon of construction that, if it is possible, effect must be given to every word of an act.

Ex parte Pittman, 31 Nev. 43, 99 P. 700, 22 L. R. A. (N. S.) 266, 20 Ann. Cas. 1319, holds that a court has no legislative power, and cannot read into a statute something beyond the manifest intention of the legislature, as gathered from the statute; its function being to determine the legislature's intention from the language used in accordance with the established rules of statutory construction.

It is held in Ex parte Rickey, 31 Nev. 82, 100 P. 134, 135 Am. St. Rep. 651, that, where a statute is plain and unambiguous, there is no room for judicial construction, but the intention of the statute must be deduced from the language used.

Ex parte Prosole, 32 Nev. 378, 108 P. 630, holds that effect must be given to every word, clause, and sentence of a statute by construing it so as to make all parts harmonize with each other and render them consistent with its general scope and object.

Heywood v. Nye County, 36 Nev. 568, 137 P. 515, holds that courts have no authority to eliminate language used in a statute or to change its obvious meaning, but are bound to give effect where possible to all the language used. See, also, State v. Beemer, 51 Nev. 192, 272 P. 656; Latterner v. Latterner, 51 Nev. 285, 274 P. 194.

Viewed in the light of these cases, let us consider the language in sections 23 and 53 of the banking act, in connection with all other provisions of the act, and especially in connection with sections 68 and 77 thereof.

4. It is our opinion that the words "or otherwise by law provided," found in section 23 of said act, destroy the exclusive power of the superintendent of banks, so far as the liquidation of insolvent banks is concerned, under the rights given him thereunder. In other words, we conclude that the object of this section, taken in connection with the banking act as a whole, is to give the superintendent of banks the primary right to administer the assets of insolvent banks, but not the exclusive right if conditions are such as to warrant a court to assume jurisdiction under proper procedure.

The force of the language expressed in section 53 is the same, when it states that the superintendent of banks shall retain his possession until a bank "be finally liquidated as herein provided, or until otherwise ordered by a court of competent jurisdiction."

These sections, taken in connection with section 68, which provides that an action under the banking act shall be governed by the provisions of the civil practice act, and section 77, which incorporates the general corporation law of the State of Nevada as a part of the act, clearly indicate that the legislature did not intend that the banking act should be exclusive.

The expression "otherwise by law provided," in section 23, is extremely broad and cannot be limited to mean as otherwise by law provided in this act; nor can the broad expression in section 53, "be finally liquidated as herein provided, or until otherwise ordered by a court of competent jurisdiction," be subjected to the narrow meaning that it relates to methods of procedure contained in the act itself. To prescribe this meaning to these provisions would be reading them entirely out of the act, and we have no right to do this. If the legislature had intended to make the procedure of the banking act exclusive, they could have easily included words of a restrictive nature restricting the procedure within the provisions of said act and eliminating the civil practice act.

5. The lower court took jurisdiction of the action

under the provisions of section 68 of the banking act, which provides generally that the action shall be governed by the civil practice act. If petitioner's theory is correct, the lower court is limited to the redress contained in these provisions of said act set forth between sections 70 and 76, inclusive. One of these forms of redress under sections 70 to 75 is the direction by the court that a corporation be formed to take over the assets of the insolvent banks and conduct the business in accordance with the articles of incorporation and the laws of the State of Nevada. The other form prescribed under sections 75 and 76 is for the presenting of a plan or plans for reopening a closed bank, in connection with other closed banks. The very nature of the act itself in these respects takes away the exclusive power of the superintendent of banks to liquidate them if either method should be adopted by the court.

Petitioner maintains that, if neither of these forms of redress can be granted by the court, its only alternative is to dismiss the action.

With this theory we cannot agree. The lower court obtained jurisdiction under section 68 of said act by the filing of an action by "depositors or creditors representing not less than fifteen per cent of the total amount of the outstanding indebtedness against said bank, exclusive of public deposits." The superintendent of banks, the depositors, creditors, and stockholders of said banks, and each county and state political subdivision or state agency or officer having deposits in said banks were made parties. The action is governed by the provisions of the civil practice act of the State of Nevada. Incidentally in said action, upon the application of 5 percent of the total number of depositors or creditors holding 50 percent or more of the total indebtedness, exclusive of public deposits, the lower court was asked to form either the corporation provided under sections 70 to 75 of said act, or adopt the plan for reopening said banks by a consolidation thereof, or by the organization of new banks, in connection with other corporations qualified as borrowers

from the Reconstruction Finance Corporation, or other federal agencies.

6. Since the action was commenced by the filing of the complaint under section 68 of the banking act, all interested parties were before the court, as well as the assets and property of the insolvent banks in question. It is elementary that, if the lower court assumed jurisdiction at all it did so as a court of equity, since insolvency cases address themselves to the equity side of our courts.

Article 6, sec. 6, of the constitution of Nevada, provides: "The district courts in the several judicial districts * * * shall have original jurisdiction in all cases in equity. * .* * " Section 14 of the same article provides: "There shall be but one form of civil action, and law and equity may be administered in the same action." "An 'action' is a judicial proceeding, either in law or equity, to obtain certain relief at hands of court." 1 Words and Phrases, Third Series, page 187.

7. The general rule is that, if a court of equity obtain jurisdiction of a controversy on any ground and for any purpose, it will retain jurisdiction for the purpose of administering complete relief. 21 Corpus Juris, "Equity," secs. 117, 137, 138; 16 Cyc. 106; Harrigan v. Gilchrist, 121 Wis. 127, 99 N. W. 909; State v. Wildes, supra.

"Equity will not suffer a wrong to be without a remedy," is a maxim of equity which has long been invoked and universally applied.

8. In this case the lower court was not satisfied to accept the plan presented for the reorganization of the banks in question nor the plan for the organization of a corporation to take over all the assets of said banks in connection with other banks, and has attempted to supply another method of relief by the appointment of receivers. We can assume that the lower court considered this action fully in the light of the situation we have referred to earlier in this opinion, and has concluded that the appointment of receivers is the proper remedy.

In this decision we are not dealing with the proposition of whether the lower court is attempting to adopt the best course in handling the affairs of the insolvent banks, but whether it is within the jurisdiction of said court to make the order it is about to make.

In the case of State ex rel. Cameron v. District Court, 48 Nev. 198, at page 203, 228 P. 617, 618, this court said: "The jurisdiction of a court depends upon its right to decide a case, and never upon the merits of its decision. Errors must be corrected by appeal, and not by disobedience." Again, at page 204 of 48 Nev., 228 P. 617, 618, in the same case, we find the following language: "We do not pass upon the questions raised by counsel for the relators as to the legality of the appointment of the receiver. We simply hold that the order, whether erroneous or not, was within the jurisdiction of the court, and that the court had jurisdiction of the parties and the subject matter involved in the rule to show cause why the relators should not be punished for contempt."

Section 251 of the civil practice act of the State of Nevada (N. C. L. 1929, sec. 8749) adopted by section 68 of the banking act, provides: "A receiver may be appointed by the court in which an action is pending, or by the judge thereof: * * * 5. In the cases when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights; 6. In all other cases where receivers have heretofore been appointed by the usages of the courts of equity."

All interested parties were before the court, and jurisdiction having been attached for all purposes, the lower court has authority to appoint a receiver or receivers to wind up the affairs of the insolvent banks.

We do not consider the proceedings before the lower court as special statutory proceedings, in view of the fact that sections 68 and 69 of the banking act term the cause an action and provide that such action shall be governed by the provisions of the civil practice act.

Since it is our opinion that the banking act is not

exclusive, the case of Murray v. American Surety Company (C. C. A.) 70 F. 341, and that class of cases relied upon by petitioner, are not in point. From our study of those cases they deal with statutes that are clearly exclusive in their nature.

We now come to the consideration of the question whether the cross-complainants are entitled to sue for and demand the appointment of receivers on account of being simple creditors, and whether the cross-complaints state facts sufficient to constitute a cause of action. Demurrers were filed by petitioner in the lower court attacking the cross - complaints on these grounds.

We are of the opinion that these objections do not go to the question of the absence of jurisdiction on the part of the lower court to appoint receivers. The lower court, having properly assumed jurisdiction, had the right to decide whether the cross-complaints were filed by the proper parties and whether they constituted causes of action. Whether the court was correct in this respect is immaterial in this proceeding; that question we do not decide. State ex rel. Cameron v. District Court, supra; Maitia v. Allied L. & L. S. Co., 49 Nev. 451, 248 P. 893; McMorry v. Sutter County, 54 Cal. App. 76, 201 P. 797; Yolo Water & Power Co. v. Lake County, 43 Cal. App. 332, 185 P. 195.

We are therefore of the opinion that the alternative writs of prohibition should be dismissed and the petitions for writs of prohibition be denied.

It is so ordered.

DUCKER, J.: I concur.

SANDERS, C. J., concurring:

These combined proceedings in prohibition, initiated in this court on the petitions of Edward J. Seaborn, as superintendent of banks of Nevada, against the respondent court and judge thereof, may be said to be the culmination of bitter controversy between certain depositors and creditors of the so-called Wingfield banks who favor

their liquidation by the superintendent of banks and those who favor their liquidation through receiverships. As between the contestants, I wish to make it plain that this court will not undertake to decide which is the best method of procedure. I also wish to make it plain that the question of whether or not it is wise or foolish, expedient or inexpedient, proper or improper, just or unjust to throw the Wingfield state banks into receivership are not matters about which the court may concern itself. The conflict of serious opinion does not suffice to bring these questions within the range of judicial cognizance.

I confess that prior to and upon the argument of these cases I was nearly convinced that as a matter of law the respondent court exceeded its jurisdiction in the appointment of a receiver or receivers in the Wingfield bank cases. In this connection, it is proper to state that I am entirely satisfied that prohibition is the proper remedy to test the question. McComb v. Dist. Ct., 36 Nev. 417, 136 P. 563; Walser v. Moran, 42 Nev. 118, 173 P. 1149, 180 P. 492; section 9255, N. C. L.

I entered upon the examination of the record and briefs with the preconceived notion that the banking act of 1933 brought the Wingfield bank cases within the well-established principle that, if a statute contains words negativing or expressly taking away the previous equitable jurisdiction, or even if, upon a fair and reasonable interpretation, the whole scope of the statute shows, by necessary intendment, a clear legislative intention to abrogate such jurisdiction, then the former jurisdiction of equity is thereby ended. 1 Pomeroy Equity Jurisp. (4th ed.) sec. 281. I also was aware of the well-settled rule that a court of equity which has obtained jurisdiction of a controversy on any ground or for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject matter, unless deprived of the right to do so by statute, but I find that the rule is not an inflexible one which a court of equity is bound to follow in every case that comes before it. 21 C. J. secs. 117, 134.

The petitioner herein bases his ground for prohibition solely upon the banking act of 1933, chapter 190, Stats. 1933, 292. In order to thoroughly understand the real ground upon which counsel for petitioner and myself differ, it will be necessary to review the statute. I note that the statute is entitled, in part, "An Act to provide a means of incorporating banks and trust companies; * * * to provide for the regulation and control of such business; * * * to incorporate herein the provisions of the general corporation law, as amended; to provide for the *reorganization, incorporation of assets,* and the liquidation of banks and trust companies *in certain cases.* * * * " (Italics mine.) I note that the act comprises eighty-nine sections, and in the last section declares that the act is an emergency measure. It is common knowledge that the act was the outgrowth of the colossal economic tragedy of the voluntary suspension of business by the Wingfield banks. I note that from section 1 to section 49, inclusive, the act is devoted to the means of incorporating banks and trust companies and the regulation and control of their business. I note that section 50 of the act provides that the governor shall appoint a bank examiner, who, from and after the passage and approval of the act and in the administration thereof, shall be known and designated as "Superintendent of Banks," at a fixed salary of $4,000 per year. I note that the section contains this clause: "Until his successor shall be named and appointed by the governor, the present bank examiner, who shall hereafter be known as 'Superintendent of Banks,' shall continue in office at the salary hereinabove provided, with all the powers and duties herein conferred and imposed." Edward J. Seaborn was at the time bank examiner and is now superintendent of banks.

Section 53 of the act provides when and under what circumstances the superintendent of banks may take possession of the business and property of any bank or banks. The section contains this significant provision:

"Upon taking possession, as aforesaid, the superintendent of banks shall retain such possession until such bank shall be placed in condition safely to resume business or its affairs be finally liquidated as herein provided, *or until otherwise ordered by a court of competent jurisdiction.*" (Italics mine.)

Section 54 of the act provides, inter alia, as follows: "Upon taking possession of the property and business of such bank, the title to all assets of such bank shall immediately become fully vested in the superintendent of banks" — followed by specific directions as to his powers and duties in the premises.

So much of the act as is deemed applicable to the Wingfield bank cases is to be found in sections 68, 69, 70 and 75.

Section 68 of the act reads in part as follows: "SEC.-68. Whenever any bank shall have voluntarily suspended business or when the superintendent of banks shall have taken possession of the assets of any bank, depositors or creditors representing not less than fifteen per cent of the total amount of the outstanding indebtedness against said bank, exclusive of public deposits, may commence an action in the district court of Ormsby County or the county in which the bank is located, against the bank, setting forth the facts that such bank is insolvent, and is unable to pay its depositors and creditors in the usual course of business, or has suspended payment of its obligations, and has refused or neglected to pay its obligations for a period of at least thirty days prior to the filing of the complaint, or either of said causes. In any such action the bank and the superintendent of banks and the directors of such bank, and the depositors and creditors and stockholders, and each county and state political subdivision or state agency or officer having deposits in said bank, shall be made parties defendant."

A separate paragraph in the section provides, in substance, that every such action shall be governed by the provisions of the civil practice act.

Section 69 of the act provides, in part, as follows: "SEC. 69. At the time of the filing of said complaint, the court shall order the superintendent of banks, within such time as the court shall fix by said order, to file a full and complete inventory of the assets of such bank in his possession, together with his appraisal or opinion of the value of said assets, and of each item constituting the same, and also a full and complete report of all claims and demands against said bank, together with the names and amount due each creditor, depositor or claimant."

Section 70 of the act provides as follows: "SEC. 70. Upon the trial of any such action, the court shall find and determine the value of the assets of such bank, and, if the court shall find and determine that such bank is' insolvent, the court shall, on the application of persons representing not less than five per cent (5%) of the total number of depositors or creditors who hold fifty per cent (50%) or more of the total outstanding indebtedness, exclusive of public deposits, direct that a corporation be formed with an authorized capital of common stock equivalent to the aggregate amount of the value of the assets of said bank as found by the court, and shall order said bank and the superintendent of banks to convey, assign, and set over all of the property, real and personal, all stocks, bonds and notes, actions and causes of actions, books and records, and all assets of every kind and character of said bank to said corporation so formed, in consideration of the issuance, fully paid and nonassessable, of the capital stock of said corporation."

Section 75 of the act provides, in part, as follows: "SEC. 75. At any time after the filing of the complaint, as in this act provided, persons representing not less than five per cent of the total number of depositors or creditors who hold fifty per cent or more of the outstanding indebtedness of the closed bank, exclusive of public deposits, may present to the court a plan or plans for the reopening of said closed bank, or for the reopening of said closed bank in connection with

other closed banks. Such plan or plans for reopening of said bank or banks may be by consolidation of banks, or by the organization of a new bank in conjunction with other corporations qualified as borrowers from the reconstruction finance corporation or other federal loan agencies or associations, the purpose of which shall be to take over, and which will take over, all or any part of the assets of the closed bank or banks."

It may be assumed that the legislative power of a state is unlimited, except as may be restricted by the constitution and laws of the United States and the constitution of any particular state. State v. Rhodes, 3 Nev. 240. The statute in question is assailed upon constitutional grounds, but in the view taken it is not necessary to discuss that phase of the statute.

Counsel for the petitioner bases his argument for the issuance of the writs upon two general propositions: (1) That the legislature, by providing a plain, complete, and adequate method of statutory liquidation of insolvent banks, intended to divest courts of their ordinary chancery jurisdiction and prerogative to appoint receivers of state banks. (2) If the respondent court obtained jurisdiction of the Wingfield bank cases, it, by virtue of the banking act of 1933, was divested of its jurisdiction and power to appoint a receiver or receivers for those institutions.

I admitted at the outset of this opinion that the district courts specified in the statute (section 68), are without legal authority to deal with the property and assets of the Wingfield banks in the hands of the superintendent of banks for liquidation, unless the statute so directs. Upon mature consideration, I am of the opinion that the statute itself directs that, whenever any bank shown to have voluntarily suspended business or when the superintendent of banks shall have taken possession of the assets, depositors and creditors may commence an action in the district courts mentioned and make the bank, its directors, stockholders, the superintendent of banks, and others parties defendant. This is, to my mind, a legislative declaration that courts may

deal with the affairs of insolvent banks in the hands of the superintendent of banks for liquidation. It will be observed that it is made a condition precedent to the commencement of the action that the complaint state the fact that the bank is insolvent, unable to pay its depositors, and unable to pay its obligations for a period of thirty days prior to the filing of the complaint. Having the authority to commence such action upon any ground or for any purpose, whether it be for liquidation, reorganization, incorporation of the assets, or for the reopening of closed banks, the court which first obtained jurisdiction had jurisdiction to administer complete relief and entire justice with respect to the subject matter of the action. Basing my opinion upon the provisions of the act itself, I conclude that the respondent court had jurisdiction to deal with the affairs of the insolvent (Wingfield) banks, in the hands of the superintendent of banks.

The second point raised by counsel for the petitioner is the only controversial question in the case. He earnestly insists that, if it be conceded that the court obtained jurisdiction of the Wingfield bank cases, it could not legally divest the title of the property and assets of said banks in the superintendent of banks and transfer the title and order the superintendent of banks to transfer and deliver up possession of the same to a person of the court's own creation—a receiver.

I have given cautious consideration to prior enactments in this state and of other states, and have scrutinized with care all of the authorities cited by counsel, but I do not find any which deal with an enactment such as must control the disposition of these cases. The differences in the various statutes from other jurisdictions as compared with that of ours may readily be accounted for. It is common knowledge that on November 1, 1932, the Wingfield banks voluntarily suspended business, with around $26,000,000 of deposits, representing as many as seventeen thousand depositors. As anxious as the legislature may have been and as diligently as they tried to enact a measure to fit the local situation, they could not

do so without the enactment of a general law for the incorporation of banks containing special features relative to the banking situation which confronted them. The result was the enactment of the banking act of 1933, which opens the door of the courts to aid in the reorganization, incorporation of assets, and the reopening of closed banks (Wingfield banks). It is apparent that these purposes could not be made legal and effectual without the aid of the courts. The superintendent of banks in charge is nothing more than an administrative officer. These new features distinguish the statute from those to be found in other jurisdictions. The dual purposes of the enactment are confusing, when we come to analyze the intent and scope of the jurisdiction conferred upon the courts. The actions authorized to be commenced by depositors and creditors against insolvent banks virtually amount to the abdication of the power and duties of the superintendent of banks. Counsel urges that any order, judgment, or decree of the court to take from the superintendent of banks his title and possession to the property is illegal and void.

This contention is based primarily upon the proposition that the entire import of the enactment is to avoid the economic injustice of liquidating insolvent banks through receiverships, and, the legislature having provided a plain, complete, and adequate method for the liquidation of insolvent banks by and through the superintendent of banks, the respondent court exceeded its jurisdiction in appointing a receiver or receivers in the Wingfield bank cases. The statute itself is a sufficient answer to this proposition. It will be observed that by section 68, 50 percent of the depositors or creditors of an insolvent bank may bring an action in the court specified therein upon any ground or for any purpose, making the bank, the superintendent of banks, and other parties defendant. Looking to the complaints in the several Wingfield bank cases, the court certainly obtained jurisdiction. This being so, under the well-settled rule it could retain jurisdiction for the purpose of administering complete relief and doing entire justice

with respect to the subject matter. 21 C. J. 134. But, say counsel, the order of appointment is without jurisdiction because the statute vests the title and possession of the property and assets of insolvent banks in the superintendent of banks; wherefore, the orders of appointment were without jurisdiction. If the respondent court erred in the appointment of a receiver or receivers, it was error within the jurisdiction and not reviewable in prohibition. In a prohibition proceeding, the sufficiency of the complaint in the respondent court will not be passed upon. 50 C. J. 708. Only for the purpose of determining the question of the court's jurisdiction can the sufficiency of a pleading in the proceeding below be considered. Ewing v. Harries, 68 Utah, 452, 250 P. 1049; 50 C. J. 708, note. The only inquiry permitted in this proceeding is whether the respondent court, having jurisdiction, exceeded its legitimate powers in the appointment of a receiver or receivers in the Wingfield bank cases. The statute having conferred jurisdiction upon the court, with full power and authority over the property, assets, and affairs of the Wingfield banks, it may not be said that as a matter of law the court was without jurisdiction or exceeded its legitimate powers in the appointment of a receiver or receivers. The fact that 50 percent of the depositors or creditors of said banks may commence an action against the superintendent of banks is of itself sufficient to refute the contention of counsel that the jurisdiction of the superintendent of banks to liquidate the property and assets of insolvent banks was intended to be exclusive.

I concur in the order.

COLEMAN, J., having disqualified himself, the governor designated Hon. E. P. CARVILLE, Judge of the Fourth Judicial District Court, to sit in his place and stead.