141 Nev., Advance Opinion 53

IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHN HOLGUIN,
Appellant,
vs.
CITY OF HENDERSON; AND CCMSI,
Respondents.

No. 89345



FILED

NOV 13 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Eighth Judicial District Court, Clark County; Adriana Escobar, Judge.

*Affirmed.*

GGRM Law Firm and Lisa M. Anderson, Las Vegas,
for Appellant.

Hooks Meng & Clement and Daniel L. Schwartz, Las Vegas,
for Respondents.

_____

BEFORE THE SUPREME COURT, PICKERING, CADISH, and LEE, JJ.

*OPINION*

By the Court, CADISH, J.:

NRS 617.455(1) classifies disabling lung diseases in firefighters, arson investigators, or police officers as compensable occupational diseases when they result from "[an] exposure to heat, smoke, fumes, tear gas, or any other noxious gases, arising out of and in the course

25-49562

of the employment." A subsequent provision, NRS 617.455(5), entitles claimants to a conclusive presumption that their lung disease has "arisen out of and in the course of the employment" if they worked full time and continuously in one of those capacities for two or more years before the date of disablement. Appellant John Holguin worked as a correctional officer for respondent City of Henderson for more than two years and filed a claim for workers' compensation benefits based on a disabling occupational lung disease after contracting COVID-19 from a coworker. During the administrative process, an appeals officer affirmed the denial of his claim, concluding that although Holguin was entitled to NRS 617.455(5)'s conclusive presumption that his lung disease arose out of and in the course of his employment, he did not show that his lung disease was caused by exposure to heat, smoke, fumes, tear gas, or other noxious gases, as required by NRS 617.455(1). Holguin was therefore not entitled to workers' compensation benefits. The district court denied judicial review, and Holguin appeals, challenging this interpretation of the statute and arguing that he did not need to satisfy the exposure requirement in NRS 617.455(1) because NRS 617.455(5) establishes a stand-alone category of compensable occupational lung-disease claims. Interpreting NRS 617.455 consistently with the plain meaning of the statutory scheme, we disagree and affirm.

*RELEVANT FACTS AND PROCEDURAL HISTORY*

Appellant John Holguin was employed as a correctional officer with the respondent City of Henderson for 11 years. In June 2021, Holguin was hospitalized and diagnosed with COVID-19. After being briefly released, he was hospitalized a second time for 23 days for treatment of COVID-19, hypoxia, pneumonia, and shortness of breath. He submitted a workers' compensation form for occupational lung disease, stating that he

came into close contact with an ill coworker whom he later discovered had contracted COVID-19. In September, the insurer, respondent CCMSI, denied Holguin's claim, and he appealed that determination. In the interim, Holguin continued to be treated for symptoms of long COVID-19 by a doctor who concluded that Holguin's COVID-19 infection was a disease of the lung.

After Holguin sought administrative review, an appeals officer ultimately affirmed the denial, concluding that Holguin did not satisfy the requirements for a compensable occupational lung-disease claim under NRS 617.455. The appeals officer determined that NRS 617.455(5) exempted Holguin from having to establish that he contracted COVID-19 in the course and scope of his employment, but that provision did not exempt him from needing to show that his lung disease was caused by exposure to heat, smoke, fumes, tear gas, or any other noxious gases, per NRS 617.455(1). Holguin petitioned the district court for judicial review. The district court denied the petition, finding that the appeals officer's decision was supported by substantial evidence and was not erroneous. Holguin appeals.

## DISCUSSION

"On appeal, this court's role is the same as the district court's: to review an appeals officer's decision for clear error or arbitrary abuse of discretion." *Las Vegas Metro. Police Dep't v. Holland*, 139 Nev. 96, 98, 527 P.3d 958, 962 (2023) (internal quotation marks omitted). But we "independently review the appeals officer's purely legal determinations, including those of statutory construction." *Manwill v. Clark County*, 123 Nev. 238, 242, 162 P.3d 876, 879 (2007). Moreover, "[i]n the context of Nevada workers' compensation laws, [we have] consistently upheld the

Supreme Court
OF
Nevada

(O) 1947A

plain meaning of the statutory scheme." *Holland*, 139 Nev. at 99, 527 P.3d at 962 (internal quotation marks omitted).

NRS 617.455 governs occupational lung-disease claims for firefighters, arson investigators, and police officers. That statute's first subsection provides that

> diseases of the lungs, resulting in either temporary or permanent disability or death, are occupational diseases and compensable as such under the provisions of this chapter if caused by exposure to heat, smoke, fumes, tear gas or any other noxious gases, arising out of and in the course of the employment of a person who, for 2 years or more, has been

employed in Nevada as a full-time salaried firefighter, arson investigator, or police officer, or, in some cases, those who serve as volunteer firefighters. NRS 617.455(1). Under NRS 617.455(5), "[a] disease of the lungs is conclusively presumed to have arisen out of and in the course of employment of a person who has been employed" full time and continuously as a firefighter, arson investigator, or police officer for two years or more "before the date of disablement if the disease is diagnosed and causes the disablement." Under the occupational disease statutory scheme, the definition of a police officer includes correctional officers. NRS 617.135(10) (2021).

Holguin argues that he satisfied the criteria for a compensable disabling occupational lung-disease claim via the conclusive presumption in NRS 617.455(5). In that regard, Holguin contends that NRS 617.455(5) creates a separate and distinct class of employees who are entitled to compensation due to a disabling lung disease, such that the appeals officer wrongly denied his claim under NRS 617.455(1) for failure to establish his

COVID-19 infection was caused by exposure to heat, smoke, fumes, tear gas, or other noxious gases. Considering NRS 617.455 in its entirety and applying a plain language reading to subsections 1 and 5, we are not persuaded that the appeals officer erred in rejecting Holguin's claim.

Under the facts presented, we agree that Holguin's COVID-19 infection qualified as a disease of the lungs, per his doctor's assessment, and that, having worked as a full-time correctional officer continuously for more than two years, NRS 617.455(5) entitled Holguin to the presumption that his lung disease arose out of and in the course of his employment. But a plain reading of subsection 5 does not support Holguin's argument for a stand-alone category of compensable lung-disease claims—rather, subsection 5's conclusive presumption must be applied in tandem with subsection 1 setting forth the threshold requirements for a compensable lung-disease claim. As relevant here, NRS 617.455(1) establishes that police officers who have been employed for two or more years and are disabled by lung disease are entitled to workers' compensation benefits *if* (1) the lung disease was caused by an exposure to heat, smoke, fumes, tear gas, or any other noxious gases, *and* (2) the exposure causing the lung disease arose out of and in the course of employment. By its very language, NRS 617.455(5)'s conclusive presumption alleviates the claimant's burden to fulfill the latter requirement. But it does not similarly exempt a claimant from the exposure requirement.

The phrase in subsection 1 requiring an exposure to heat, smoke, fumes, tear gas, or other noxious gases precedes the "arising out of and in the course of employment" phrase and is separated by a comma, which supports that the latter phrase modifies the former phrase but does not displace it. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The*

*Interpretation of Legal Texts* 161 (2012) (explaining that "[p]unctuation is a permissible indicator of meaning" and "will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part"). This reading also harmonizes both subsections of the statute consistent with the canons of statutory construction. *Allstate Ins. v. Fackett*, 125 Nev. 132, 138, 206 P.3d 572, 576 (2009) (observing that statutory construction involves reading a statutory scheme as a whole to harmonize its provisions and prevent unreasonable results); *see also Barber v. State*, 131 Nev. 1065, 1069, 363 P.3d 459, 462 (2015) (recognizing that courts "attempt[ ] to harmonize [statutory] provisions in order to carry out the overriding legislative purpose"). Were we to construe the "arisen out of and in the course of the employment" phrase in subsection 5 as fully relieving a claimant of any burden to show causation, subsection 1's separate language about exposure would be rendered surplusage except, perhaps, as to volunteer firefighters or those with less than two years of continuous service. *Seaborn v. First Jud. Dist. Ct.*, 55 Nev. 206, 219, 29 P.2d 500, 503 (1934) (explaining that "[n]o sentence, clause, or word should be construed as unmeaning and surplusage if a construction can be found legitimately which will give force and preserve all of the words of the statute"); *see* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 167 (explaining that the whole-text canon "calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts").

Holguin, however, points to *Manwill*, 123 Nev. 238, 162 P.3d 876, a case that interpreted NRS 617.457, which governs occupational heart-disease claims. In that case, a firefighter was diagnosed with pericarditis early in his 25-year firefighting career. *Id.* at 240, 162 P.3d at

Supreme Court
OF
Nevada

(O) 1947A

6

878. Later in his career, he became disabled and filed an occupational heart-disease claim. *Id.* at 241, 162 P.3d at 878. The claims administrator denied the claim under NRS 617.457(1), which entitled firefighters with heart disease to a conclusive presumption that their heart disease arose out of and in the course of employment for workers' compensation purposes, so long as the date of disablement occurred after at least five years of full-time, uninterrupted work as a firefighter. *Id.* at 240-42, 162 P.3d at 877-79. An appeals officer upheld the denial, concluding that the firefighter was not entitled to NRS 617.457's conclusive presumption because his heart disease predated the completion of five years' qualifying employment and his preexisting heart condition progressed independently of his firefighting career. *Id.* at 241, 162 P.3d at 878.

On appeal from the denial of the firefighter's petition for judicial review, we examined the plain language of NRS 617.457(1), which at the time provided as follows:

> Notwithstanding any other provision of this chapter, diseases of the heart of a person who, for 5 years or more, has been employed in a full-time continuous, uninterrupted and salaried occupation as a firefighter or police officer in this State before the date of disablement are conclusively presumed to have arisen out of and in the course of the employment.

*Id.* at 242, 163 P.3d at 879.[1] We held that "this provision require[d] a firefighter seeking occupational disease benefits to show only two things: heart disease and five years' qualifying employment before disablement."

---

[1]In 2015, the Legislature amended NRS 617.457(1) to require only two or more years of qualifying employment instead of five. 2015 Nev. Stat., ch. 420, § 3, at 2429.

*Id.* at 242, 162 P.3d at 879. And once the firefighter satisfied those two requirements, "his heart disease, whatever the cause—whether congenital, idiopathic, or otherwise induced," qualified for the conclusive presumption and thus established a compensable heart-disease claim, even where the firefighter's occupation was not a contributing factor to the progression of the disease. *Id.* at 242-43, 162 P.3d at 879-80.

But *Manwill* necessarily did not address lung-disease claims under NRS 617.455 and that statute's additional causal requirement. Despite the nearly identical language in NRS 617.455(5) and NRS 617.457(1) with respect to establishing a conclusive presumption that the disabling disease arose out of and in the course of employment, NRS 617.455(1) provides that lung diseases are compensable occupational diseases "*if caused by* exposure to heat, smoke, fumes, tear gas or any other noxious gases." (Emphasis added.) NRS 617.457 contains no such analogous language for heart-disease claims. This omission in the heart-disease statute was by design, as evidenced by statutory amendments. In particular, while a previous version of NRS 617.457(1) required firefighters and police officers to meet certain causal factors for compensable heart-disease claims, requiring the condition to be related to "exposure to noxious gases, fumes or smoke or from extreme overexertion, stress or danger," NRS 617.457(1) (1987), the Legislature eliminated these causal factors for occupational heart-disease claims and replaced them with the conclusive presumption provision in effect today, *see* 1989 Nev. Stat., ch. 480, § 2, at 1021. Though the Legislature simultaneously amended NRS 617.455 by adding the conclusive presumption for lung-disease claims via subsection 5, that amendment did not similarly eliminate the exposure requirement in

NRS 617.455(1). NRS 617.455 (as amended in 1989); 1989 Nev. Stat., ch. 480, § 1, at 1020-21.

Indeed, NRS 617.455's plain language dictates that NRS 617.455(5)'s conclusive presumption merely alleviated Holguin's burden to show that his COVID-19 infection arose out of and in the course of his employment—it did not obviate his burden to meet the exposure requirement. *See Holland*, 139 Nev. at 99, 527 P.3d at 962 (recognizing our consistent reliance on the plain meaning of workers' compensation statutes). We therefore conclude that the appeals officer did not err when upholding the denial of Holguin's occupational lung-disease claim because Holguin did not show that his COVID-19 infection was caused by an exposure to heat, smoke, fumes, tear gas, or other noxious gases.

## CONCLUSION

A plain reading of NRS 617.455 supports the appeals officer's conclusion that a claimant must satisfy both causal components of NRS 617.455(1) to establish a lung-disease claim for workers' compensation. Holguin had a disabling lung disease and worked full time and continuously as a correctional officer for more than two years; therefore, NRS 617.455(5) entitled him to a conclusive presumption that his COVID-19 infection arose out of and in the course of his employment, thus satisfying one of the causal components of NRS 617.455(1). He did not, however, satisfy the other component of subsection 1, which required showing that his lung disease was caused by exposure to heat, smoke, fumes, tear gas, or other noxious

Supreme Court
OF
Nevada

(O) 1947A

gases. Accordingly, we affirm the order denying Holguin's petition for judicial review.

_____, J.
Cadish

We concur:

_____, J.
Pickering

_____, J.
Lee